# EXHIBIT B

*Execution Version*

THIS GUARANTEE AGREEMENT IS SUBJECT TO THE PROVISIONS OF THE INDENTURE DATED AS OF DECEMBER [•], 2016 (AS AMENDED, RESTATED, SUPPLEMENTED OR OTHERWISE MODIFIED FROM TIME TO TIME), AMONG ERP IRON ORE, LLC, AS ISSUER, THE GUARANTORS PARTY THERETO, AND WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE, COLLATERAL AGENT, PAYING AGENT, REGISTRAR AND CALCULATION AGENT.

GUARANTEE AGREEMENT

made by

THOMAS MATTHEW CLARKE,

ANA MERCEDES CLARKE,

ERP IRON ORE, LLC

and

ERP COMPLIANT COKE, LLC

in favor of

WILMINGTON SAVINGS FUND SOCIETY, FSB

as Trustee under the Indenture governing the Floating Rate Senior Secured Amortizing PIK Toggle Notes due 2019 issued by ERP Iron Ore, LLC

and

each Holder of Notes

Dated as of December [•], 2016

#4846-0297-3755

*Execution Version*

# TABLE OF CONTENTS

Page

SECTION 1. DEFINED TERMS ............................................................................................. 1
   1.1   Definitions .................................................................................................................. 1
   1.2   Other Definitional Provisions ................................................................................... 4

SECTION 2. GUARANTEE ................................................................................................... 4
   2.1   Guarantee .................................................................................................................. 4
   2.2   Limitation on Guarantor Liability ............................................................................ 6
   2.3   Execution and Delivery ............................................................................................ 6
   2.4   Subrogation ............................................................................................................... 6
   2.5   Benefits Acknowledged ............................................................................................ 7
   2.6   Release of Guarantees .............................................................................................. 7
   2.7   Payments .................................................................................................................. 7

SECTION 3. [RESERVED] .................................................................................................... 7

SECTION 4. REPRESENTATIONS AND WARRANTIES .................................................. 7
   4.1   Principal Residence .................................................................................................. 7
   4.2   Guarantee Shares ...................................................................................................... 7
   4.3   Contracts ................................................................................................................... 8
   4.4   Litigation .................................................................................................................. 9
   4.5   Inspections; No Other Representations ..................................................................... 9
   4.6   Solvency ................................................................................................................... 9
   4.7   No Existing Event of Default .................................................................................... 9

SECTION 5. COVENANTS ................................................................................................... 9
   5.1   Changes in Name, etc. .............................................................................................. 9
   5.2   Contracts ................................................................................................................... 9
   5.3   Taxes ...................................................................................................................... 10
   5.4   Further Assurances ................................................................................................. 10
   5.5   Financial Statements .............................................................................................. 10
   5.6   Stay, Extension and Usury Laws ........................................................................... 10
   5.7   Notices .................................................................................................................... 10

SECTION 6. REMEDIAL PROVISIONS ........................................................................... 10
   6.1   Guarantee Shares .................................................................................................... 10
   6.2   Application of Proceeds .......................................................................................... 10
   6.3   Events of Default under the Indenture .................................................................... 11
   6.4   Subordination ......................................................................................................... 11

SECTION 7. THE TRUSTEE .............................................................................................. 11
   7.1   The Appointment of the Trustee and Collateral Agent as Attorneys-in-
        Fact, etc .................................................................................................................. 11
   7.2   Authority of the Trustee ......................................................................................... 11

i

| 7.3 | Trustee May File Proofs of Claim | 12 |
| 7.4 | Other | 12 |

| SECTION 8. | MISCELLANEOUS | 12 |
| 8.1 | Amendments in Writing | 12 |
| 8.2 | Notices | 12 |
| 8.3 | No Waiver by Course of Conduct; Cumulative Remedies | 13 |
| 8.4 | Enforcement Expenses; Indemnification | 13 |
| 8.5 | Successors and Assigns | 13 |
| 8.6 | Calculations | 13 |
| 8.7 | Counterparts | 14 |
| 8.8 | Severability | 14 |
| 8.9 | Section Headings | 14 |
| 8.10 | Integration | 14 |
| 8.11 | **GOVERNING LAW** | 14 |
| 8.12 | Submission To Jurisdiction; Waivers | 14 |
| 8.13 | Acknowledgements | 15 |
| 8.14 | U.S.A. PATRIOT Act | 15 |
| 8.15 | **WAIVER OF JURY TRIAL** | 15 |
| 8.16 | Effectiveness of Guarantee Agreement. | 15 |

SCHEDULES

| Schedule 1 | Notice Addresses |
| Schedule 2 | Guarantee Shares |
| Schedule 3 | Jurisdictions of Primary Residence(s) |

EXHIBITS

| Exhibit 1 | Indenture |

Case 3:16-cv-03084-CAB   Doc #: 2-6 Filed: 12/20/16   5 of 52. PageID #: 52

## GUARANTEE AGREEMENT

GUARANTEE AGREEMENT, dated as of December [•], 2016, made by each of the signatories hereto (together with any other entity that may become a party hereto as provided herein, the "Guarantors"), in favor of Wilmington Savings Fund Society, FSB, as trustee (in such capacity, the "Trustee") on behalf of the holders of the Notes (as defined below) issued pursuant to the indenture, dated as of December [•], 2016 (as amended, supplemented or otherwise modified from time to time, the "Indenture"), among ERP Iron Ore, LLC, a Virginia limited liability company (the "Issuer"), the guarantors listed on the signature pages thereto and Wilmington Savings Fund Society, FSB, as Trustee, as collateral agent (in such capacity, the "Collateral Agent"), paying agent (in such capacity, the "Paying Agent"), registrar (in such capacity, the "Registrar") and calculation agent (in such capacity, the "Calculation Agent").

## W I T N E S S E T H:

WHEREAS, on May 5, 2015, Magnetation LLC (the "Debtor Company") and certain of its subsidiaries (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., in the United States Bankruptcy Court for the District of Minnesota (the "Bankruptcy Court") and the Debtor Company and the Debtors have continued to operate their businesses and manage their properties as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

WHEREAS, the Issuer has duly authorized the creation and issuance of $22,500,000 aggregate principal amount of its Floating Rate Senior Secured Amortizing PIK Toggle Notes due December [•], 2019 (the "Notes") pursuant to the Indenture, which Notes shall be issued in connection with the Closing (as defined in that certain asset purchase agreement, dated as of December [•], 2016, by and among MG Initial Purchaser, LLC, a Delaware limited liability company, the Issuer, the Debtor Company and certain of its Subsidiaries) in connection with the sale of assets by the Debtor Company to the Issuer; and

WHEREAS, each of the Issuer and ERP Compliant COKE, LLC, a Delaware limited liability company ("Coke Entity") has duly authorized the execution and delivery of the Indenture;

WHEREAS, pursuant to the Indenture, the Issuer shall issue its Notes upon the terms and subject to the conditions set forth therein.

NOW, THEREFORE, the Issuer, the Coke Entity, the Guarantors who are signatories hereto and the Trustee agree as follows for the benefit of each other and for the equal and ratable benefit of the Holders of the Notes.

## SECTION 1.   DEFINED TERMS

1.1    Definitions.  (a) Unless otherwise defined herein, terms defined in the Indenture (attached hereto as Exhibit 1) and used herein shall have the meanings given to them in the Indenture, and the following terms are used herein as defined in the New York UCC: Chattel Paper and Instruments.

(b)      The following terms shall have the following meanings:

"Agreement":  this Guarantee Agreement, as the same may be amended, supplemented or otherwise modified from time to time.

"Asset Purchase Agreement": that certain asset purchase agreement, dated as of December [•], 2016, by and among MG Initial Purchaser, LLC, a Delaware limited liability company, the Issuer, the Debtor Company and certain of its Subsidiaries.

"Bankruptcy Court": as defined in the preamble hereto.

"Beneficiary Parties":  the collective reference to the Trustee, Collateral Agent and the Holders.

"Calculation Agent": as defined in the preamble hereto.

"Coke Entity": as defined in the preamble hereto.

"Collateral Agent": as defined in the preamble hereto.

"Contracts":  the Asset Purchase Agreement, the Transaction Documents and the Notes Documents.

"Debtor Company": as defined in the preamble hereto.

"Debtors": as defined in the preamble hereto.

"Guarantee Shares":  the shares of Capital Stock listed on Schedule 2, together with any other shares, stock certificates, options, interests or rights of any nature whatsoever in respect of the Capital Stock listed on Schedule 2 (or of any successor in interest by merger, consolidation or otherwise) that may be issued or granted to, or held by, the Limited Guarantor while this Agreement is in effect.

"Guarantee Shares Issuers":  the collective reference to each issuer of any Guarantee Shares.

"Guaranteed Obligations": as defined in Section 2.1(a).

"Guarantor Obligations":  with respect to any Guarantor, all obligations and liabilities of such Guarantor which may arise under or in connection with this Agreement (including, without limitation, Section 2 of this Agreement) or any other Notes Document, in each case whether on account of guarantee obligations, reimbursement obligations, fees, indemnities, costs, expenses or otherwise (including, without limitation, all fees and disbursements of counsel to the Trustee or the Collateral Agent or to the Holders that are required to be paid by such Guarantor pursuant to the terms of this Agreement or any other Notes Document).

"Guarantors":  as defined in the preamble hereto.

#4846-0297-3755

"Holders": as defined in the preamble hereto.

"Indenture": as defined in the preamble hereto.

"Issuer": as defined in the preamble hereto.

"Issuer Obligations": means, with respect to the Indenture, any principal (including the Amortization Amounts to be paid on each Amortization Payment Date), interest (including any interest accruing subsequent to the filing of a petition in bankruptcy, reorganization or similar proceeding at the rate provided for in the documentation with respect thereto, whether or not such interest is an allowed claim under applicable state, federal or foreign law), other monetary obligations, penalties, fees, indemnifications, reimbursements (including reimbursement obligations with respect to letters of credit and banker's acceptances), damages and other liabilities of the Issuer under the Indenture or the Notes.

"Limited Guarantor": means Ana Mercedes Clarke.

"Magnetation Contracts" means any material written contract or agreement between the Issuer and any Person (in each case, whether third party or intercompany) assumed by the Issuer from one or more of the Debtors in connection with the transactions described in the APA and related agreements.

"Material Adverse Effect" means a material adverse effect on and/or material adverse developments with respect to (i) the business, operations, properties, assets or condition (financial or otherwise) of the Issuer and its Subsidiaries taken as a whole, (ii) the ability of the Issuer or any of its Subsidiaries to fully and timely perform its or their Obligations, (iii) the legality, validity, binding effect or enforceability against the Issuer or any of the Guarantors of the Notes, this Indenture or any other Notes Document, or (iv) the rights, remedies and benefits available to, or conferred upon, the Trustee, the Collateral Agent or the Holders under this Agreement or the Indenture.

"Notes": as defined in the preamble hereto.

"Obligations":  (i) in the case of the Issuer, the Issuer Obligations, and (ii) in the case of each Guarantor, its Guarantor Obligations.

"Paying Agent": as defined in the preamble hereto.

"Registrar": as defined in the preamble hereto.

"Transaction": means the sale of assets pursuant to the Asset Purchase Agreement and the issuance of the Notes pursuant to the Indenture.

"Transaction Documents": as defined in the Asset Purchase Agreement.

"Trustee": as defined in the preamble hereto.

"Unlimited Guarantor": means Thomas Matthew Clarke.

1.2    Other Definitional Provisions.  (a) The words "hereof," "herein", "hereto" and "hereunder" and words of similar import when used in this Agreement shall refer to this Agreement as a whole and not to any particular provision of this Agreement, and Section and Schedule references are to this Agreement unless otherwise specified.

(b)    The meanings given to terms defined herein shall be equally applicable to both the singular and plural forms of such terms.

## SECTION 2.   GUARANTEE

2.1    Guarantee.

(a)    Each of the Guarantors hereby, jointly and severally, irrevocably and unconditionally guarantees on a senior unsecured basis to each Holder and to the Trustee and to each of their successors and assigns, irrespective of the validity and enforceability of the Indenture, the Notes or any other Issuer Obligations thereunder, that:  (1) the principal, premium, if any, and interest on the Notes shall be promptly paid in full when due, whether at Stated Maturity, by acceleration, redemption or otherwise, and interest on the overdue principal and interest on the Notes, if any, if lawful, and all other Issuer Obligations to the Holders, the Trustee and Collateral Agent under the Indenture or the Notes shall be promptly paid in full or performed, all in accordance with the terms thereof; and (2) in case of any extension of time of payment or renewal of any Notes or any of such other obligations, that same shall be promptly paid in full when due or performed in accordance with the terms of the extension or renewal, whether at Stated Maturity, by acceleration or otherwise (collectively, the "Guaranteed Obligations").  If an Event of Default occurs and is continuing under Section 6.01(a)(1), (a)(2) or (a)(9) of the Indenture, and the sequence of Standstill Periods and Obligor and Coke Guarantor (as such terms are defined in the Indenture) asset sales required under the Indenture has not resulted in full payment of the Issuer Obligations by the Issuer and the Coke Guarantor, the Guarantors shall be jointly and severally obligated to pay immediately any amounts due under their Guarantor Obligations in accordance with Section 6.02(b) of the Indenture, subject to Section 2.2(b) hereof. Each Guarantor agrees that this is a guarantee of payment and not a guarantee of collection.

(b)    Each of the Guarantors hereby agrees that their Guarantor Obligations hereunder shall be unconditional, irrespective of the validity, regularity or enforceability of the Notes or the Indenture, the absence of any action to enforce the same, any waiver or consent by any Holder with respect to any provisions hereof or thereof, the recovery of any judgment against the Issuer, any action to enforce the same or any other circumstance which might otherwise constitute a legal or equitable discharge or defense of a Guarantor.  Each Guarantor hereby waives diligence, presentment, demand of payment, filing of claims with a court in the event of insolvency or bankruptcy of the Issuer, any right to require a proceeding first against the Issuer, protest, notice and all demands whatsoever and covenants that the Guarantor Obligations shall not be discharged except by complete performance of the Obligations contained in the Notes, the Indenture and herein.

(c)    Each of the Guarantors also agrees, jointly and severally, in accordance with Sections 6.02(b) and 7.07 of the Indenture and subject to Section 2.2(b) hereof, to pay any

and all costs and expenses (including reasonable attorneys' fees and expenses) incurred by the Trustee, the Collateral Agent or any Holder in enforcing any rights under this Agreement or the Indenture.

(d)    If any Holder, the Trustee or the Collateral Agent is required by any court or otherwise to return to the Issuer, any Guarantor or any custodian, trustee, liquidator or other similar official acting in relation to the Issuer or any Guarantor, any amount paid either to the Trustee, the Collateral Agent or such Holder, this Agreement, to the extent theretofore discharged, shall be reinstated in full force and effect.

(e)    Each Guarantor agrees that it shall not be entitled to enforce any right of subrogation in relation to the Holders in respect of any Obligations pursuant to the Indenture and hereby until payment in full of all Obligations pursuant to the Indenture and hereby.  Each Guarantor further agrees that, as between the Guarantors, on the one hand, and the Holders, the Trustee and the Collateral Agent, on the other hand, (1) the maturity of the Obligations pursuant to the Indenture and hereby may be accelerated as provided in Article 6 of the Indenture for the purposes of this Agreement, notwithstanding any stay, injunction or other prohibition preventing such acceleration in respect of the Obligations pursuant to this Agreement, and (2) in the event of any declaration of acceleration of such Obligations as provided in Article 6 of the Indenture, such Obligations (whether or not due and payable) shall forthwith become due and payable by the Guarantors for the purpose of this Agreement in accordance with Section 6.02(b) of the Indenture, subject to Section 2.2(b) hereof.  The Guarantors shall have the right to seek contribution from any non-paying Obligor (as defined in the Indenture) so long as the exercise of such right does not impair the rights of the Trustee, the Collateral Agent or the Holders hereunder, *provided, however*, the contribution provided by the Limited Guarantor hereunder shall be limited pursuant to Section 2.2(b).

(f)    The Guarantor Obligations shall remain in full force and effect and continue to be effective should any petition be filed by or against the Issuer for liquidation or reorganization, should the Issuer become insolvent or make an assignment for the benefit of creditors or should a receiver or trustee be appointed for all or any significant part of the Issuer's assets, and shall, to the fullest extent permitted by law, continue to be effective or be reinstated, as the case may be, if at any time payment and performance of the Notes are, pursuant to applicable law, rescinded or reduced in amount, or must otherwise be restored or returned by any obligee on the Notes or the Guarantor Obligations, whether as a "voidable preference," "fraudulent transfer" or otherwise, all as though such payment or performance had not been made.  In the event that any payment or any part thereof, is rescinded, reduced, restored or returned, the Notes shall, to the fullest extent permitted by law, be reinstated and deemed reduced only by such amount paid and not so rescinded, reduced, restored or returned.

(g)    In case any provision of this Agreement shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

(h)    Each payment to be made by a Guarantor in respect of its obligations hereunder shall be made without set-off, counterclaim, reduction or diminution of any kind or nature.

2.2     Limitation on Guarantor Liability.

(a)     Each Guarantor, and by its acceptance of Notes, each Holder, hereby confirms that it is the intention of all such parties that the Guarantor Obligations of such Guarantor not constitute a fraudulent conveyance or a fraudulent transfer for purposes of Bankruptcy Law, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act or any similar federal or state law to the extent applicable to any Guarantor Obligations.  To effectuate the foregoing intention, the Trustee, the Collateral Agent, the Holders and the Guarantors irrevocably agree that the Guarantor Obligations of each Guarantor shall be limited to the maximum amount as will, after giving effect to such maximum amount and all other contingent and fixed liabilities of such Guarantor that are relevant under such laws and after giving effect to any collections from, rights to receive contribution from or payments made by or on behalf of any other Guarantor in respect of the Guarantor Obligations of such other Guarantor under this Section 2, result in the Guarantor Obligations of such Guarantor under its Guarantor Obligations not constituting a fraudulent conveyance or fraudulent transfer under applicable law.

(b)     Notwithstanding anything contained in this Agreement or the Contracts, the Guarantor Obligations of the Limited Guarantor pursuant to this Agreement shall be limited to the value (as certified pursuant to the certificate delivered to the Trustee) of the Limited Guarantor's interest in the "Guarantee Shares" as of the date hereof.[1]  The Limited Guarantor shall not have any obligation or liability to pay in excess of such value under any circumstance.

2.3     Execution and Delivery.

(a)     To evidence its Guarantor Obligations set forth in Section 2.1, each Guarantor hereby agrees that it shall execute, or cause to be validly executed on such Guarantor's behalf, this Agreement.

(b)     Each Guarantor hereby agrees that its Guarantor Obligations set forth herein shall remain in full force and effect notwithstanding the absence of the endorsement of any notation of such Guarantor Obligations on the Notes.

(c)     If an Officer whose signature is on the Indenture no longer holds that office at the time the Trustee authenticates the Notes, the obligations of the Guarantors hereunder shall be valid nevertheless.

(d)     The delivery of any Note by the Trustee, after the authentication thereof under the Indenture, shall constitute due delivery of the Guarantor Obligations set forth in this Agreement on behalf of the Guarantors.

2.4     Subrogation.

Each Guarantor shall be subrogated to all rights of the Holders against the Issuer and Coke Entity in respect of any amounts paid by any Guarantor pursuant to the provisions of

---

[1] Each of the Guarantors party hereto has executed and delivered a certificate to the Trustee, on behalf of the Holders of the Notes certifying that as of the date hereof the value of the Guarantee Shares significantly exceeds the aggregate principal amount of Notes issued under the Indenture on the date on which such Indenture was executed.

Section 2.1; *provided* that, if an Event of Default has occurred and is continuing, no Guarantor shall be entitled to enforce or receive any payments arising out of, or based upon, such right of subrogation until all amounts then due and payable by the Issuer under the Indenture or the Notes shall have been paid in full.

     2.5    <u>Benefits Acknowledged</u>.

     Each Guarantor acknowledges that it will receive direct and indirect benefits from the financing arrangements contemplated by the Indenture and that the guarantee and waivers made by it pursuant to this Agreement are knowingly made in contemplation of such benefits.

     2.6    <u>Release of Guarantees</u>.

     The Guarantor Obligations of a Guarantor shall be automatically and unconditionally released and discharged, and no further action by such Guarantor, the Issuer, the Trustee or the Collateral Agent shall be required for the release of such Guarantor Obligations, upon (x) the discharge of the Issuer's Obligations in accordance with Article 12 of the Indenture, (y) the payment in full of the principal, accrued interest and unpaid premium, if any, on the Notes upon stated maturity, or (z) upon redemption of the Notes pursuant to Article 3 of the Indenture.

     At the written request of the Issuer, the Trustee and Collateral Agent shall execute and deliver any documents reasonably required in order to evidence such release, discharge and termination in respect of the applicable Guarantor Obligations.

     2.7    <u>Payments</u>.

     Each Guarantor hereby guarantees that payments hereunder shall be paid to the Paying Agent or Trustee, as applicable, without set off or counterclaim in United States dollars at the office of the Paying Agent or Trustee, as applicable and as set forth in Section 2 of the Indenture.

SECTION 3.   [RESERVED]

SECTION 4.   REPRESENTATIONS AND WARRANTIES

Each Guarantor hereby represents and warrants to the Trustee and each Holder as of the date of this Agreement that:

     4.1    <u>Principal Residence</u>.

     On the date hereof, such Guarantor's principal residence is specified on Schedule 1.

     4.2    <u>Guarantee Shares</u>.  (a) All of the Guarantee Shares have been duly and validly issued and are fully paid and nonassessable.

#4846-0297-3755

(b)      The Limited Guarantor is the record and beneficial owner of, and has good and marketable title to, the Guarantee Shares, free of any and all liens or options in favor of, or claims of, any other Person.

4.3      Contracts.  To the Guarantors' actual knowledge (a) no consent of any party (other than such Guarantor) to any Contract such Guarantor is a party to is required, or purports to be required, in connection with the execution, delivery and performance of this Agreement, except as has been obtained.

(b)      This Agreement and each other Contract such Guarantor is party to (with respect to the Magnetation Contracts, to the Issuer's actual knowledge) is in full force and effect and constitutes a valid and legally enforceable obligation of the parties thereto, subject to the effects of bankruptcy, insolvency, fraudulent conveyance, reorganization, moratorium and other similar laws relating to or affecting creditors' rights generally, general equitable principles (whether considered in a proceeding in equity or at law) and an implied covenant of good faith and fair dealing.

(c)      No consent or authorization of, filing with or other act by or in respect of any Governmental Authority is required in connection with the execution, delivery, performance, validity or enforceability of this Agreement and each other Contract such Guarantor is party to (with respect to the Magnetation Contracts, to the Issuer's actual knowledge) by any party thereto other than those which have been duly obtained, made or performed, are in full force and effect and do not subject the scope of any such Contract to any material adverse limitation, either specific or general in nature.

(d)      Neither such Guarantor nor any of the other parties to this Agreement and each other Contract such Guarantor is party to (with respect to the Magnetation Contracts, to the Issuer's actual knowledge) is in default in the performance or observance of any of the terms thereof in any manner that, in the aggregate, could reasonably be expected to have a Material Adverse Effect.

(e)      The right, title and interest of such Guarantor in, to and under this Agreement and each other Contract such Guarantor is party to (with respect to the Magnetation Contracts, to the Issuer's actual knowledge) are not subject to any defenses, offsets, counterclaims or claims that, in the aggregate, could reasonably be expected to have a Material Adverse Effect.

(f)      Such Guarantor has delivered to the Trustee and Collateral Agent a complete and correct copy of this Agreement and each other Contract such Guarantor is party to (with respect to the Magnetation Contracts, to the Issuer's actual knowledge), including all amendments, supplements and other modifications thereto.

(g)      No amount payable to such Guarantor under or in connection with this Agreement and each other Contract such Guarantor is party to (with respect to the Magnetation Contracts, to the Issuer's actual knowledge) is evidenced by any Instrument or Chattel Paper which has not been delivered to the Trustee and Collateral Agent.

#4846-0297-3755

(h)     None of the parties to this Agreement and each other Contract such Guarantor is party to (with respect to the Magnetation Contracts, to the Issuer's actual knowledge) is a Governmental Authority.

4.4     <u>Litigation</u>.  There is no action, suit, investigation or proceeding pending against, or to the knowledge of such Guarantor, threatened against or affecting, such Guarantor before any arbitrator or any Governmental Authority which in any manner challenges or seeks to prevent, enjoin, alter or materially delay the transactions contemplated by this Agreement.

4.5     <u>Inspections; No Other Representations</u>.  Such Guarantor is an informed and sophisticated person or has engaged expert advisors, experienced in the evaluation of the Transaction and the guarantee provided hereunder.  Such Guarantor has undertaken such investigation and has been provided with and has evaluated such documents and information as it has deemed necessary to enable it to make an informed and intelligent decision with respect to the execution, delivery and performance of this Agreement.  Such Guarantor shall undertake such further investigation and request such additional documents and information as it deems necessary.

4.6     <u>Solvency</u>.  Each of the Guarantors is Solvent.  As used herein, the term "<u>Solvent</u>" means, with respect to any Person on a particular date, that on such date (i) the fair market value of the assets of such Person is greater than the total amount of liabilities (including contingent liabilities) of such Person, (ii) the present fair salable value of the assets of such Person is greater than the amount that will be required to pay the probable liabilities of such Person on its debts as they become absolute and matured, (iii) such Person is able to realize upon its assets and pay its debts and other liabilities, including contingent obligations, as they mature and (iv) such Person does not have unreasonably small capital.

4.7     <u>No Existing Event of Default</u>.  No event of default exists under any contract, indenture, mortgage, loan agreement, note, lease or other agreement or instrument constituting Indebtedness.

## SECTION 5.   COVENANTS

Each Guarantor covenants and agrees with the Trustee and the Holders that, from and after the date of this Agreement until (x) the payment in full of the principal of, accrued and unpaid interest and premium, if any, on the Notes at the stated maturity or upon redemption pursuant to Article 3 of the Indenture, (y) the Indenture has been satisfied and discharged in accordance with Article 12 of the Indenture, or (z) as to the Limited Guarantor, the payment in full of the Obligations of the Limited Guarantor pursuant to Section 2.2(b) hereof:

5.1     <u>Changes in Name, etc.</u>  Such Guarantor shall not, except upon 15 days' prior written notice to the Trustee and the Collateral Agent, (i) change his or her principal residence from that referred to in Section 4.1 or (ii) change his or her name.

5.2     <u>Contracts</u>.  Such Guarantor shall perform and comply in all material respects with all its obligations under this Agreement and each other Contract such Guarantor is party to, subject to any available claims, rights or defenses thereunder.

5.3     Taxes. Such Guarantor shall pay all taxes, assessments and governmental levies except (a) such as are being contested in good faith and by appropriate documentation, negotiations or proceedings or (b) where the failure to effect such payment is not adverse in any material respect to the Trustee, Collateral Agent or the Holders.

5.4     Further Assurances. Such Guarantor shall execute any and all further documents, financing statements, agreements and instruments, and take all further actions that may be required under applicable law, or that the Trustee or Collateral Agent may reasonably request, to facilitate, and to avoid conflict with, the transactions set forth in the Indenture and other Notes Documents, and Asset Purchase Agreement and the Transaction Documents, and the guarantee hereunder.

5.5     Financial Statements.

The Unlimited Guarantor shall deliver, on an annual basis or as reasonably requested more frequently than annually by the Trustee acting on behalf of the Holders of the Notes, financial statements and other assurances of such Guarantor's ability to satisfy such Guarantor's Guarantor Obligations and any other obligations existing under this Agreement.

5.6     Stay, Extension and Usury Laws.  Each of the Guarantors covenants (to the extent that it may lawfully do so) that it shall not at any time insist upon, plead, or in any manner whatsoever claim or take the benefit or advantage of, any stay, extension or usury law wherever enacted, now or at any time hereafter in force, that may affect the covenants or the performance of this Agreement or any provisions of the Indenture incorporated by reference herein; and each of the Guarantors (to the extent that it may lawfully do so) hereby expressly waives all benefit or advantage of any such law, and covenant that it shall not, by resort to any such law, hinder, delay or impede the execution of any power herein granted to the Trustee, but shall suffer and permit the execution of every such power as though no such law has been enacted.

5.7     Notices.

Such Guarantor shall advise the Trustee and the Holders of the Notes promptly, in reasonable detail, of the occurrence of (i) any event which could reasonably be expected to have a Material Adverse Effect on the Issuer or the guarantee hereunder or (ii) any event that is an Event of Default under the Indenture, subject expressly to Section 6 herein.

## SECTION 6.   REMEDIAL PROVISIONS

6.1     Guarantee Shares.  If an Event of Default shall occur and be continuing, (i) the Trustee shall have the right, subject to Section 6.02(b) of the Indenture and the passage of time and other asset liquidation activity described therein, to receive payment in respect of the Guaranteed Obligations (x) in the case of the Unlimited Guarantor, without any limit as to contribution or liability other than as set forth in Section 2.2(a); and (y) in the case of the Limited Guarantor, with limited liability and/or contribution as set forth in Sections 2.2(a) and (b).

6.2     Application of Proceeds.  The Trustee, Collateral Agent or Paying Agent, as applicable, shall apply all or any part of proceeds of the guarantee set forth in Section 2 in payment of the Obligations pursuant to Section 6.13 of the Indenture.

#4846-0297-3755

6.3     Events of Default under the Indenture.  Each Guarantor agrees that the provisions of Article 6 of the Indenture as they apply to Guarantors under the Indenture apply to each Guarantor under this Agreement, mutatis mutandis.  For the avoidance of doubt, each of the Events of Default in Section 6.01(a)(3), (4), (6), (7), (10), and (13) of the Indenture are incorporated by reference herein and apply equally to each of the Guarantors under this Agreement, mutatis mutandis, and any Event of Default herein as it relates to a Guarantor hereunder shall be deemed an Event of Default under the Indenture and subject to the limitations on enforcement of rights against the Guarantors set forth in Section 6.02 of the Indenture.

6.4     Subordination.  Each Guarantor hereby agrees that, upon the occurrence and during the continuance of an Event of Default, unless otherwise agreed by the Trustee and Collateral Agent, all Indebtedness owing by it to any Subsidiary of the Issuer shall be fully subordinated to the indefeasible payment in full in cash of such Guarantor's Obligations.

SECTION 7.   THE TRUSTEE

7.1     The Appointment of the Trustee and Collateral Agent as Attorneys-in-Fact, etc.

(a)     Each Guarantor hereby irrevocably constitutes and appoints the Trustee and any officer or agent thereof, with full power of substitution, as its true and lawful attorney-in-fact with full irrevocable power and authority in the place and stead of such Guarantor and in the name of such Guarantor or in its own name, for the purpose of carrying out the terms of this Agreement, to take any and all appropriate action and to execute any and all documents and instruments which may be necessary or desirable to accomplish the purposes of this Agreement.

Anything in this Section 7.1(a) to the contrary notwithstanding, the Trustee agrees that it will not exercise any rights under the power of attorney provided for in this Section 7.1(a) unless (x) the Specified Event of Default has occurred and is continuing or (y) any Deficiency Amount remains outstanding following the Third Standstill Expiration Date.

(b)     If any Guarantor fails to perform or comply with any of its agreements contained herein, the Trustee, at its option, but without any obligation so to do, may perform or comply, or otherwise cause performance or compliance, with such agreement.

(c)     The expenses of the Trustee incurred in connection with actions undertaken as provided in this Section 7.1, together with interest thereon at a rate per annum equal to the highest rate per annum at which interest would then be payable on the Notes, from the date of payment by the Trustee to the date reimbursed by the relevant Guarantor, shall be payable by such Guarantor to the Trustee on demand.

(d)     Each Guarantor hereby ratifies all that said attorneys shall lawfully do or cause to be done by virtue hereof.  All powers, authorizations and agencies contained in this Agreement are coupled with an interest and are irrevocable until this Agreement is terminated and the security interests created hereby are released.

7.2     Authority of the Trustee.  Each Guarantor acknowledges that the rights and responsibilities of the Trustee under this Agreement or the Indenture with respect to any action taken by the Trustee or the exercise or non-exercise by the Trustee of any option, voting right,

request, judgment or other right or remedy provided for herein or the Indenture or resulting or arising out of this Agreement or the Indenture shall, as between the Trustee and the Holders, be governed by the Indenture and by such other agreements with respect thereto as may exist from time to time among them, but, as between the Trustee and the Guarantors, the Trustee shall be conclusively presumed to be acting as agent for the Holders with full and valid authority so to act or refrain from acting, and no Guarantor shall be under any obligation, or entitlement, to make any inquiry respecting such authority.

7.3    <u>Trustee May File Proofs of Claim</u>.  The Trustee may file proofs of claim and other papers or documents as may be necessary or advisable in order to have the claims of the Trustee (including any claim for the reasonable compensation, expenses, disbursements and advances of the Trustee, their agents and counsel) and the Holders of the Notes allowed in any judicial proceedings relative to the Issuer (or any other obligor upon the Notes, including the Guarantors), its creditors or its property and is entitled and empowered to participate as a member in any official committee of creditors appointed in such matter and to collect, receive and distribute any money or other property payable or deliverable on any such claims.  Any custodian in any such judicial proceeding is hereby authorized by each Holder to make such payments to the Trustee, and in the event that the Trustee shall consent to the making of such payments directly to the Holders, to pay to the Trustee any amount due to it for the reasonable compensation, expenses, disbursements and advances of the Trustee and its agents and counsel, and any other amounts due the Trustee as provided in Section 7.07 of the Indenture.  To the extent that the payment of any such compensation, expenses, disbursements and advances of the Trustee, its agents and counsel, and any other amounts due the Trustee as provided in Section 7.07 of the Indenture out of the estate in any such proceeding, shall be denied for any reason, payment of the same shall be secured by a lien on, and shall be paid out of, any and all distributions, dividends, money, securities and other properties that the Holders may be entitled to receive in such proceeding whether in liquidation or under any plan of reorganization or arrangement or otherwise.  Nothing herein contained shall be deemed to authorize the Trustee to authorize or consent to or accept or adopt on behalf of any Holder any plan of reorganization, arrangement, adjustment or composition affecting the Notes or the rights of any Holder, or to authorize the Trustee to vote in respect of the claim of any Holder in any such proceeding.

7.4    <u>Other</u>.  Each Guarantor agrees that the provisions of Article 7 of the Indenture applicable to any Guarantor thereunder shall apply to such Guarantor under this Agreement, *mutatis mutandis*.

## SECTION 8.   MISCELLANEOUS

8.1    <u>Amendments in Writing</u>.  None of the terms or provisions of this Agreement may be waived, amended, supplemented or otherwise modified except in accordance with Article 9 of the Indenture.

8.2    <u>Notices</u>.  All notices, requests and demands to or upon the Trustee or any Guarantor hereunder shall be effected in the manner provided for in Section 13.02 of the Indenture; *provided* that any such notice, request or demand to or upon any Guarantor shall be addressed to such Guarantor at its notice address set forth on Schedule 1.

#4846-0297-3755

8.3     No Waiver by Course of Conduct; Cumulative Remedies.  Neither the Trustee nor any Holder shall by any act (except by a written instrument pursuant to Section 8.1), delay, indulgence, omission or otherwise be deemed to have waived any right or remedy hereunder or to have acquiesced in any Default or Event of Default.  No failure to exercise, nor any delay in exercising, on the part of the Trustee or any Holder, any right, power or privilege hereunder shall operate as a waiver thereof.  No single or partial exercise of any right, power or privilege hereunder shall preclude any other or further exercise thereof or the exercise of any other right, power or privilege.  A waiver by the Trustee or any Holder of any right or remedy hereunder on any one occasion shall not be construed as a bar to any right or remedy which the Trustee or any Holder would otherwise have on any future occasion.  The rights and remedies herein provided are cumulative, may be exercised singly or concurrently and are not exclusive of any other rights or remedies provided by law.

8.4     Enforcement Expenses; Indemnification.  (a) Each Guarantor agrees to pay or reimburse each Holder and the Trustee for all its reasonable costs and expenses incurred in collecting against such Guarantor under the guarantee contained in Section 2 or otherwise enforcing or preserving any rights under this Agreement and the other Notes Documents to which such Guarantor is a party, including, without limitation, the reasonable fees and disbursements of counsel (including the allocated fees and expenses of in-house counsel) to each Holder and of counsel to the Trustee.

(b)     Each Guarantor agrees to pay, and to save the Trustee and the Holders harmless from, any and all liabilities with respect to, or resulting from any delay in paying, any and all stamp, excise, sales or other taxes which may be payable or determined to be payable in connection with any of the transactions contemplated by this Agreement.

(c)     Each Guarantor agrees to pay, and to save the Trustee and the Holders harmless from, any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever with respect to the execution, delivery, enforcement, performance and administration of this Agreement to the extent the Issuer would be required to do so pursuant to Section 7.07 of the Indenture.

(d)     The agreements in this Section 8.4 shall survive repayment of the Obligations and all other amounts payable under the Indenture and the other Notes Documents.

8.5     Successors and Assigns.  This Agreement shall be binding upon the successors and assigns of each Guarantor and shall inure to the benefit of the applicable Beneficiary Parties and their successors and assigns; *provided* that no Guarantor may assign, transfer or delegate any of its rights or obligations under this Agreement without the prior written consent of the Trustee.

8.6     Calculations.  The Guarantors hereto acknowledge that all calculations of the Calculation Agent, in the absence of manifest error, shall be conclusive for all purposes and binding and neither the Trustee nor the Paying Agent shall have the duty to verify determinations of interest rates made by the Calculation Agent.

8.7     Counterparts.  This Agreement may be executed by one or more of the parties to this Agreement on any number of separate counterparts (including by email or telecopy), and all of said counterparts taken together shall be deemed to constitute one and the same instrument.

8.8     Severability.  Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

8.9     Section Headings.  The Section headings used in this Agreement are for convenience of reference only and are not to affect the construction hereof or be taken into consideration in the interpretation hereof.

8.10    Integration.  This Agreement and the other Notes Documents represent the agreement of the Guarantors and the applicable Beneficiary Parties with respect to the subject matter hereof and thereof, and there are no promises, undertakings, representations or warranties by the Trustee or any Holder relative to subject matter hereof and thereof not expressly set forth or referred to herein or in the other Notes Documents.

8.11    **GOVERNING LAW.  THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAW OF THE STATE OF NEW YORK.**

8.12    Submission To Jurisdiction; Waivers.  Each Guarantor hereby irrevocably and unconditionally:

(a)     submits for itself and its property in any legal action or proceeding relating to this Agreement, or for recognition and enforcement of any judgment in respect thereof, to the non-exclusive general jurisdiction of any state or federal court sitting in the Borough of Manhattan in the City of New York, and appellate courts from any thereof;

(b)     consents that any such action or proceeding may be brought in such courts and waives any objection that it may now or hereafter have to the venue of any such action or proceeding in any such court or that such action or proceeding was brought in an inconvenient court and agrees not to plead or claim the same;

(c)     agrees that service of process in any such action or proceeding may be effected by mailing a copy thereof by registered or certified mail (or any substantially similar form of mail), postage prepaid, to such Guarantor at its address referred to in Section 8.2 or at such other address of which the Trustee shall have been notified pursuant thereto;

(d)     agrees that nothing herein shall affect the right to effect service of process in any other manner permitted by law or shall limit the right to sue in any other jurisdiction; and

(e)     waives, to the maximum extent not prohibited by law, any right it may have to claim or recover in any legal action or proceeding referred to in this Section any special, exemplary, punitive or consequential damages.

8.13    Acknowledgements.  Each Guarantor hereby acknowledges that:

(a)     it has been advised by counsel in the negotiation, execution and delivery of this Agreement and the other Notes Documents to which it is a party (if any);

(b)     neither the Trustee nor any Holder has any fiduciary relationship with or duty to any Guarantor arising out of or in connection with this Agreement or any of the other Notes Documents, and the relationship between the Guarantors, on the one hand, and the Trustee and Holders, on the other hand, in connection herewith or therewith is solely that of debtor and creditor; and

(c)     no joint venture is created hereby or by the other Notes Documents or otherwise exists by virtue of the transactions contemplated hereby among the Holders or among the Guarantors and the Holders.

8.14    U.S.A. PATRIOT Act. The parties hereto acknowledge that in accordance with Section 326 of the U.S.A. PATRIOT Act, the Trustee is required to obtain, verify, and record information that identifies each Person or legal entity that establishes a relationship or opens an account with the Trustee.  The parties to this Agreement agree that they shall provide the Trustee with such information as it may request in order for the Trustee to satisfy the requirements of the U.S.A. PATRIOT Act.

8.15    **WAIVER OF JURY TRIAL.**  EACH OF THE GUARANTORS, THE TRUSTEE AND COLLATERAL AGENT HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE INDENTURE, THE NOTES, THE OTHER NOTES DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED HEREBY AND THEREBY.

8.16    Effectiveness of Guarantee Agreement.

No party shall have any rights, obligations or other benefits or responsibilities hereunder unless and until such time as the parties have issued the Notes hereunder in connection with the Closing (as defined in the APA), and the Closing has occurred; provided that the Trustee shall be entitled to an Officers' Certificate and Opinion of Counsel that such closing has occurred and that all conditions precedent have been satisfied.


[*Signatures on following page*]

IN WITNESS WHEREOF, each of the undersigned has caused this Guarantee Agreement to be duly executed and delivered as of the date first above written.

#4846-0297-3755

ERP IRON ORE, LLC

By

     By:   _____
            Name:
            Title:

ERP COMPLIANT COKE, LLC

By

By: _____
Name:
Title:

THOMAS MATTHEW CLARKE, as Unlimited
Guarantor


By: _____
    Name:  Thomas Matthew Clarke


ANA MERCEDES CLARKE, as Limited
Guarantor


By: _____
    Name:  Ana Mercedes Clarke

#4846-0297-3755

WILMINGTON SAVINGS FUND SOCIETY, FSB
as Trustee

By:      _____
Name:
Title:

Schedule 1

NOTICE ADDRESSES OF GUARANTORS

For all Guarantors:

c/o ERP Compliant Fuels, LLC
15 Appledore Lane
Natural Bridge, Virginia 24578
Attention: Tom Clarke
Email: Tom.Clarke@kissito.org

#4846-0297-3755

Schedule 2

DESCRIPTION OF GUARANTEE SHARES

**Guarantee Shares:**

| Guarantee Shares Issuer | Percentage ownership |
|---|---|
| Seneca Coal Resources, LLC | 38.5% |
| Seminole Coal Resources, LLC | 38.5% |
| Conuma Coal Resources Limited | 38.5%[2] |

---

[2] The Limited Guarantor owns, indirectly, 38.5% of Conuma Coal Resources Limited, which is directly owned 100.0% by ERP Coal Resources Limited through its holding of 1,000,000 Class A Voting common shares in Conuma Coal Resources Limited, evidenced by the share certificate labeled "3AC".

Schedule 3

### LOCATION OF JURISDICTION OF PRIMARY RESIDENCE

| Guarantor | Location of Primary Residence |
|:---:|:---:|
| Tom Clarke | Commonwealth of Virginia |
| Ana Clarke | Commonwealth of Virginia |

**EXHIBIT I**

**Form of Ana Clarke Guaranty**

*Execution Version*

THIS GUARANTEE AGREEMENT IS SUBJECT TO THE PROVISIONS OF THE INDENTURE DATED AS OF DECEMBER [•], 2016 (AS AMENDED, RESTATED, SUPPLEMENTED OR OTHERWISE MODIFIED FROM TIME TO TIME), AMONG ERP IRON ORE, LLC, AS ISSUER, THE GUARANTORS PARTY THERETO, AND WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE, COLLATERAL AGENT, PAYING AGENT, REGISTRAR AND CALCULATION AGENT.

GUARANTEE AGREEMENT

made by

THOMAS MATTHEW CLARKE,

ANA MERCEDES CLARKE,

ERP IRON ORE, LLC

and

ERP COMPLIANT COKE, LLC

in favor of

WILMINGTON SAVINGS FUND SOCIETY, FSB

as Trustee under the Indenture governing the Floating Rate Senior Secured Amortizing PIK Toggle Notes due 2019 issued by ERP Iron Ore, LLC

and

each Holder of Notes

Dated as of December [•], 2016

#4846-0297-3755

# TABLE OF CONTENTS

<u>Page</u>

SECTION 1.  DEFINED TERMS ..................................................................................... 1
    1.1  Definitions ............................................................................................................. 1
    1.2  Other Definitional Provisions ............................................................................... 4

SECTION 2.  GUARANTEE ............................................................................................ 4
    2.1  Guarantee ............................................................................................................... 4
    2.2  Limitation on Guarantor Liability ......................................................................... 6
    2.3  Execution and Delivery ......................................................................................... 6
    2.4  Subrogation ............................................................................................................ 6
    2.5  Benefits Acknowledged ......................................................................................... 7
    2.6  Release of Guarantees ........................................................................................... 7
    2.7  Payments ................................................................................................................ 7

SECTION 3.  [RESERVED] ............................................................................................. 7

SECTION 4.  REPRESENTATIONS AND WARRANTIES ............................................ 7
    4.1  Principal Residence ............................................................................................... 7
    4.2  Guarantee Shares ................................................................................................... 7
    4.3  Contracts ................................................................................................................ 8
    4.4  Litigation ............................................................................................................... 9
    4.5  Inspections; No Other Representations .................................................................. 9
    4.6  Solvency ................................................................................................................. 9
    4.7  No Existing Event of Default ................................................................................. 9

SECTION 5.  COVENANTS ............................................................................................. 9
    5.1  Changes in Name, etc. ........................................................................................... 9
    5.2  Contracts ................................................................................................................ 9
    5.3  Taxes .................................................................................................................... 10
    5.4  Further Assurances .............................................................................................. 10
    5.5  Financial Statements ........................................................................................... 10
    5.6  Stay, Extension and Usury Laws ........................................................................ 10
    5.7  Notices ................................................................................................................. 10

SECTION 6.  REMEDIAL PROVISIONS ..................................................................... 10
    6.1  Guarantee Shares ................................................................................................. 10
    6.2  Application of Proceeds ....................................................................................... 10
    6.3  Events of Default under the Indenture ................................................................ 11
    6.4  Subordination ...................................................................................................... 11

SECTION 7.  THE TRUSTEE ........................................................................................ 11
    7.1  The Appointment of the Trustee and Collateral Agent as Attorneys-in-
           Fact, etc .............................................................................................................. 11
    7.2  Authority of the Trustee ...................................................................................... 11

#4846-0297-3755

Case 3:15-cv-03034-GAB  Doc #: 2-3  Filed: 12/20/16  80 of 52  PageID #: 77

7.3     Trustee May File Proofs of Claim ..................................................... 12
7.4     Other ............................................................................................... 12

SECTION 8.    MISCELLANEOUS ...................................................................... 12
8.1     Amendments in Writing........................................................................ 12
8.2     Notices ................................................................................................ 12
8.3     No Waiver by Course of Conduct; Cumulative Remedies .................... 13
8.4     Enforcement Expenses; Indemnification ............................................. 13
8.5     Successors and Assigns........................................................................ 13
8.6     Calculations........................................................................................ 13
8.7     Counterparts ....................................................................................... 14
8.8     Severability ......................................................................................... 14
8.9     Section Headings ................................................................................ 14
8.10    Integration .......................................................................................... 14
8.11    **GOVERNING LAW** ..................................................................... 14
8.12    Submission To Jurisdiction; Waivers ................................................. 14
8.13    Acknowledgements.............................................................................. 15
8.14    U.S.A. PATRIOT Act ........................................................................ 15
8.15    **WAIVER OF JURY TRIAL**......................................................... 15
8.16    Effectiveness of Guarantee Agreement. ............................................. 15

<u>SCHEDULES</u>

Schedule 1        Notice Addresses
Schedule 2        Guarantee Shares
Schedule 3        Jurisdictions of Primary Residence(s)

<u>EXHIBITS</u>

Exhibit 1         Indenture

ii

#4846-0297-3755

## GUARANTEE AGREEMENT

GUARANTEE AGREEMENT, dated as of December [•], 2016, made by each of the signatories hereto (together with any other entity that may become a party hereto as provided herein, the "Guarantors"), in favor of Wilmington Savings Fund Society, FSB, as trustee (in such capacity, the "Trustee") on behalf of the holders (the "Holders") of the Notes (as defined below) issued pursuant to the indenture, dated as of December [•], 2016 (as amended, supplemented or otherwise modified from time to time, the "Indenture"), among ERP Iron Ore, LLC, a Virginia limited liability company (the "Issuer"), the guarantors listed on the signature pages thereto and Wilmington Savings Fund Society, FSB, as Trustee, as collateral agent (in such capacity, the "Collateral Agent"), paying agent (in such capacity, the "Paying Agent"), registrar (in such capacity, the "Registrar") and calculation agent (in such capacity, the "Calculation Agent").

## W I T N E S S E T H:

WHEREAS, on May 5, 2015, Magnetation LLC (the "Debtor Company") and certain of its subsidiaries (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., in the United States Bankruptcy Court for the District of Minnesota (the "Bankruptcy Court") and the Debtor Company and the Debtors have continued to operate their businesses and manage their properties as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

WHEREAS, the Issuer has duly authorized the creation and issuance of $22,500,000 aggregate principal amount of its Floating Rate Senior Secured Amortizing PIK Toggle Notes due December [•], 2019 (the "Notes") pursuant to the Indenture, which Notes shall be issued in connection with the Closing (as defined in that certain asset purchase agreement, dated as of December [•], 2016, by and among MG Initial Purchaser, LLC, a Delaware limited liability company, the Issuer, the Debtor Company and certain of its Subsidiaries) in connection with the sale of assets by the Debtor Company to the Issuer; and

WHEREAS, each of the Issuer and ERP Compliant COKE, LLC, a Delaware limited liability company ("Coke Entity") has duly authorized the execution and delivery of the Indenture;

WHEREAS, pursuant to the Indenture, the Issuer shall issue its Notes upon the terms and subject to the conditions set forth therein.

NOW, THEREFORE, the Issuer, the Coke Entity, the Guarantors who are signatories hereto and the Trustee agree as follows for the benefit of each other and for the equal and ratable benefit of the Holders of the Notes.

## SECTION 1.   DEFINED TERMS

1.1    Definitions.  (a) Unless otherwise defined herein, terms defined in the Indenture (attached hereto as Exhibit 1) and used herein shall have the meanings given to them in the Indenture, and the following terms are used herein as defined in the New York UCC: Chattel Paper and Instruments.

(b)     The following terms shall have the following meanings:

"Agreement":  this Guarantee Agreement, as the same may be amended, supplemented or otherwise modified from time to time.

"Asset Purchase Agreement": that certain asset purchase agreement, dated as of December [•], 2016, by and among MG Initial Purchaser, LLC, a Delaware limited liability company, the Issuer, the Debtor Company and certain of its Subsidiaries.

"Bankruptcy Court": as defined in the preamble hereto.

"Beneficiary Parties":  the collective reference to the Trustee, Collateral Agent and the Holders.

"Calculation Agent": as defined in the preamble hereto.

"Coke Entity": as defined in the preamble hereto.

"Collateral Agent": as defined in the preamble hereto.

"Contracts":  the Asset Purchase Agreement, the Transaction Documents and the Notes Documents.

"Debtor Company": as defined in the preamble hereto.

"Debtors": as defined in the preamble hereto.

"Guarantee Shares":  the shares of Capital Stock listed on Schedule 2, together with any other shares, stock certificates, options, interests or rights of any nature whatsoever in respect of the Capital Stock listed on Schedule 2 (or of any successor in interest by merger, consolidation or otherwise) that may be issued or granted to, or held by, the Limited Guarantor while this Agreement is in effect.

"Guarantee Shares Issuers":  the collective reference to each issuer of any Guarantee Shares.

"Guaranteed Obligations": as defined in Section 2.1(a).

"Guarantor Obligations":  with respect to any Guarantor, all obligations and liabilities of such Guarantor which may arise under or in connection with this Agreement (including, without limitation, Section 2 of this Agreement) or any other Notes Document, in each case whether on account of guarantee obligations, reimbursement obligations, fees, indemnities, costs, expenses or otherwise (including, without limitation, all fees and disbursements of counsel to the Trustee or the Collateral Agent or to the Holders that are required to be paid by such Guarantor pursuant to the terms of this Agreement or any other Notes Document).

"Guarantors":  as defined in the preamble hereto.

"Holders": as defined in the preamble hereto.

"Indenture": as defined in the preamble hereto.

"Issuer": as defined in the preamble hereto.

"Issuer Obligations": means, with respect to the Indenture, any principal (including the Amortization Amounts to be paid on each Amortization Payment Date), interest (including any interest accruing subsequent to the filing of a petition in bankruptcy, reorganization or similar proceeding at the rate provided for in the documentation with respect thereto, whether or not such interest is an allowed claim under applicable state, federal or foreign law), other monetary obligations, penalties, fees, indemnifications, reimbursements (including reimbursement obligations with respect to letters of credit and banker's acceptances), damages and other liabilities of the Issuer under the Indenture or the Notes.

"Limited Guarantor": means Ana Mercedes Clarke.

"Magnetation Contracts" means any material written contract or agreement between the Issuer and any Person (in each case, whether third party or intercompany) assumed by the Issuer from one or more of the Debtors in connection with the transactions described in the APA and related agreements.

"Material Adverse Effect" means a material adverse effect on and/or material adverse developments with respect to (i) the business, operations, properties, assets or condition (financial or otherwise) of the Issuer and its Subsidiaries taken as a whole, (ii) the ability of the Issuer or any of its Subsidiaries to fully and timely perform its or their Obligations, (iii) the legality, validity, binding effect or enforceability against the Issuer or any of the Guarantors of the Notes, this Indenture or any other Notes Document, or (iv) the rights, remedies and benefits available to, or conferred upon, the Trustee, the Collateral Agent or the Holders under this Agreement or the Indenture.

"Notes": as defined in the preamble hereto.

"Obligations":  (i) in the case of the Issuer, the Issuer Obligations, and (ii) in the case of each Guarantor, its Guarantor Obligations.

"Paying Agent": as defined in the preamble hereto.

"Registrar": as defined in the preamble hereto.

"Transaction": means the sale of assets pursuant to the Asset Purchase Agreement and the issuance of the Notes pursuant to the Indenture.

"Transaction Documents": as defined in the Asset Purchase Agreement.

"Trustee": as defined in the preamble hereto.

"Unlimited Guarantor": means Thomas Matthew Clarke.

1.2    <u>Other Definitional Provisions</u>.  (a) The words "hereof," "herein", "hereto" and "hereunder" and words of similar import when used in this Agreement shall refer to this Agreement as a whole and not to any particular provision of this Agreement, and Section and Schedule references are to this Agreement unless otherwise specified.

(b)    The meanings given to terms defined herein shall be equally applicable to both the singular and plural forms of such terms.

SECTION 2.   GUARANTEE

2.1    <u>Guarantee</u>.

(a)    Each of the Guarantors hereby, jointly and severally, irrevocably and unconditionally guarantees on a senior unsecured basis to each Holder and to the Trustee and to each of their successors and assigns, irrespective of the validity and enforceability of the Indenture, the Notes or any other Issuer Obligations thereunder, that:  (1) the principal, premium, if any, and interest on the Notes shall be promptly paid in full when due, whether at Stated Maturity, by acceleration, redemption or otherwise, and interest on the overdue principal and interest on the Notes, if any, if lawful, and all other Issuer Obligations to the Holders, the Trustee and Collateral Agent under the Indenture or the Notes shall be promptly paid in full or performed, all in accordance with the terms thereof; and (2) in case of any extension of time of payment or renewal of any Notes or any of such other obligations, that same shall be promptly paid in full when due or performed in accordance with the terms of the extension or renewal, whether at Stated Maturity, by acceleration or otherwise (collectively, the "<u>Guaranteed Obligations</u>").  If an Event of Default occurs and is continuing under Section 6.01(a)(1), (a)(2) or (a)(9) of the Indenture, and the sequence of Standstill Periods and Obligor and Coke Guarantor (as such terms are defined in the Indenture) asset sales required under the Indenture has not resulted in full payment of the Issuer Obligations by the Issuer and the Coke Guarantor, the Guarantors shall be jointly and severally obligated to pay immediately any amounts due under their Guarantor Obligations in accordance with Section 6.02(b) of the Indenture, subject to Section 2.2(b) hereof. Each Guarantor agrees that this is a guarantee of payment and not a guarantee of collection.

(b)    Each of the Guarantors hereby agrees that their Guarantor Obligations hereunder shall be unconditional, irrespective of the validity, regularity or enforceability of the Notes or the Indenture, the absence of any action to enforce the same, any waiver or consent by any Holder with respect to any provisions hereof or thereof, the recovery of any judgment against the Issuer, any action to enforce the same or any other circumstance which might otherwise constitute a legal or equitable discharge or defense of a Guarantor.  Each Guarantor hereby waives diligence, presentment, demand of payment, filing of claims with a court in the event of insolvency or bankruptcy of the Issuer, any right to require a proceeding first against the Issuer, protest, notice and all demands whatsoever and covenants that the Guarantor Obligations shall not be discharged except by complete performance of the Obligations contained in the Notes, the Indenture and herein.

(c)    Each of the Guarantors also agrees, jointly and severally, in accordance with Sections 6.02(b) and 7.07 of the Indenture and subject to Section 2.2(b) hereof, to pay any

and all costs and expenses (including reasonable attorneys' fees and expenses) incurred by the Trustee, the Collateral Agent or any Holder in enforcing any rights under this Agreement or the Indenture.

(d)     If any Holder, the Trustee or the Collateral Agent is required by any court or otherwise to return to the Issuer, any Guarantor or any custodian, trustee, liquidator or other similar official acting in relation to the Issuer or any Guarantor, any amount paid either to the Trustee, the Collateral Agent or such Holder, this Agreement, to the extent theretofore discharged, shall be reinstated in full force and effect.

(e)     Each Guarantor agrees that it shall not be entitled to enforce any right of subrogation in relation to the Holders in respect of any Obligations pursuant to the Indenture and hereby until payment in full of all Obligations pursuant to the Indenture and hereby.  Each Guarantor further agrees that, as between the Guarantors, on the one hand, and the Holders, the Trustee and the Collateral Agent, on the other hand, (1) the maturity of the Obligations pursuant to the Indenture and hereby may be accelerated as provided in Article 6 of the Indenture for the purposes of this Agreement, notwithstanding any stay, injunction or other prohibition preventing such acceleration in respect of the Obligations pursuant to this Agreement, and (2) in the event of any declaration of acceleration of such Obligations as provided in Article 6 of the Indenture, such Obligations (whether or not due and payable) shall forthwith become due and payable by the Guarantors for the purpose of this Agreement in accordance with Section 6.02(b) of the Indenture, subject to Section 2.2(b) hereof.  The Guarantors shall have the right to seek contribution from any non-paying Obligor (as defined in the Indenture) so long as the exercise of such right does not impair the rights of the Trustee, the Collateral Agent or the Holders hereunder, *provided, however*, the contribution provided by the Limited Guarantor hereunder shall be limited pursuant to Section 2.2(b).

(f)     The Guarantor Obligations shall remain in full force and effect and continue to be effective should any petition be filed by or against the Issuer for liquidation or reorganization, should the Issuer become insolvent or make an assignment for the benefit of creditors or should a receiver or trustee be appointed for all or any significant part of the Issuer's assets, and shall, to the fullest extent permitted by law, continue to be effective or be reinstated, as the case may be, if at any time payment and performance of the Notes are, pursuant to applicable law, rescinded or reduced in amount, or must otherwise be restored or returned by any obligee on the Notes or the Guarantor Obligations, whether as a "voidable preference," "fraudulent transfer" or otherwise, all as though such payment or performance had not been made.  In the event that any payment or any part thereof, is rescinded, reduced, restored or returned, the Notes shall, to the fullest extent permitted by law, be reinstated and deemed reduced only by such amount paid and not so rescinded, reduced, restored or returned.

(g)     In case any provision of this Agreement shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

(h)     Each payment to be made by a Guarantor in respect of its obligations hereunder shall be made without set-off, counterclaim, reduction or diminution of any kind or nature.

#4846-0297-3755

2.2    <u>Limitation on Guarantor Liability</u>.

(a)    Each Guarantor, and by its acceptance of Notes, each Holder, hereby confirms that it is the intention of all such parties that the Guarantor Obligations of such Guarantor not constitute a fraudulent conveyance or a fraudulent transfer for purposes of Bankruptcy Law, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act or any similar federal or state law to the extent applicable to any Guarantor Obligations. To effectuate the foregoing intention, the Trustee, the Collateral Agent, the Holders and the Guarantors irrevocably agree that the Guarantor Obligations of each Guarantor shall be limited to the maximum amount as will, after giving effect to such maximum amount and all other contingent and fixed liabilities of such Guarantor that are relevant under such laws and after giving effect to any collections from, rights to receive contribution from or payments made by or on behalf of any other Guarantor in respect of the Guarantor Obligations of such other Guarantor under this Section 2, result in the Guarantor Obligations of such Guarantor under its Guarantor Obligations not constituting a fraudulent conveyance or fraudulent transfer under applicable law.

(b)    Notwithstanding anything contained in this Agreement or the Contracts, the Guarantor Obligations of the Limited Guarantor pursuant to this Agreement shall be limited to the value (as certified pursuant to the certificate delivered to the Trustee) of the Limited Guarantor's interest in the "Guarantee Shares" as of the date hereof.[1] The Limited Guarantor shall not have any obligation or liability to pay in excess of such value under any circumstance.

2.3    <u>Execution and Delivery</u>.

(a)    To evidence its Guarantor Obligations set forth in Section 2.1, each Guarantor hereby agrees that it shall execute, or cause to be validly executed on such Guarantor's behalf, this Agreement.

(b)    Each Guarantor hereby agrees that its Guarantor Obligations set forth herein shall remain in full force and effect notwithstanding the absence of the endorsement of any notation of such Guarantor Obligations on the Notes.

(c)    If an Officer whose signature is on the Indenture no longer holds that office at the time the Trustee authenticates the Notes, the obligations of the Guarantors hereunder shall be valid nevertheless.

(d)    The delivery of any Note by the Trustee, after the authentication thereof under the Indenture, shall constitute due delivery of the Guarantor Obligations set forth in this Agreement on behalf of the Guarantors.

2.4    <u>Subrogation</u>.

Each Guarantor shall be subrogated to all rights of the Holders against the Issuer and Coke Entity in respect of any amounts paid by any Guarantor pursuant to the provisions of

---

[1] Each of the Guarantors party hereto has executed and delivered a certificate to the Trustee, on behalf of the Holders of the Notes certifying that as of the date hereof the value of the Guarantee Shares significantly exceeds the aggregate principal amount of Notes issued under the Indenture on the date on which such Indenture was executed.

#4846-0297-3755

Section 2.1; *provided* that, if an Event of Default has occurred and is continuing, no Guarantor shall be entitled to enforce or receive any payments arising out of, or based upon, such right of subrogation until all amounts then due and payable by the Issuer under the Indenture or the Notes shall have been paid in full.

    2.5    <u>Benefits Acknowledged</u>.

    Each Guarantor acknowledges that it will receive direct and indirect benefits from the financing arrangements contemplated by the Indenture and that the guarantee and waivers made by it pursuant to this Agreement are knowingly made in contemplation of such benefits.

    2.6    <u>Release of Guarantees</u>.

    The Guarantor Obligations of a Guarantor shall be automatically and unconditionally released and discharged, and no further action by such Guarantor, the Issuer, the Trustee or the Collateral Agent shall be required for the release of such Guarantor Obligations, upon (x) the discharge of the Issuer's Obligations in accordance with Article 12 of the Indenture, (y) the payment in full of the principal, accrued interest and unpaid premium, if any, on the Notes upon stated maturity, or (z) upon redemption of the Notes pursuant to Article 3 of the Indenture.

    At the written request of the Issuer, the Trustee and Collateral Agent shall execute and deliver any documents reasonably required in order to evidence such release, discharge and termination in respect of the applicable Guarantor Obligations.

    2.7    <u>Payments</u>.

    Each Guarantor hereby guarantees that payments hereunder shall be paid to the Paying Agent or Trustee, as applicable, without set off or counterclaim in United States dollars at the office of the Paying Agent or Trustee, as applicable and as set forth in Section 2 of the Indenture.

SECTION 3.   [RESERVED]

SECTION 4.   REPRESENTATIONS AND WARRANTIES

Each Guarantor hereby represents and warrants to the Trustee and each Holder as of the date of this Agreement that:

    4.1    <u>Principal Residence</u>.

    On the date hereof, such Guarantor's principal residence is specified on Schedule 1.

    4.2    <u>Guarantee Shares</u>.  (a) All of the Guarantee Shares have been duly and validly issued and are fully paid and nonassessable.

(b)     The Limited Guarantor is the record and beneficial owner of, and has good and marketable title to, the Guarantee Shares, free of any and all liens or options in favor of, or claims of, any other Person.

4.3     <u>Contracts</u>.  To the Guarantors' actual knowledge (a) no consent of any party (other than such Guarantor) to any Contract such Guarantor is a party to is required, or purports to be required, in connection with the execution, delivery and performance of this Agreement, except as has been obtained.

(b)     This Agreement and each other Contract such Guarantor is party to (with respect to the Magnetation Contracts, to the Issuer's actual knowledge) is in full force and effect and constitutes a valid and legally enforceable obligation of the parties thereto, subject to the effects of bankruptcy, insolvency, fraudulent conveyance, reorganization, moratorium and other similar laws relating to or affecting creditors' rights generally, general equitable principles (whether considered in a proceeding in equity or at law) and an implied covenant of good faith and fair dealing.

(c)     No consent or authorization of, filing with or other act by or in respect of any Governmental Authority is required in connection with the execution, delivery, performance, validity or enforceability of this Agreement and each other Contract such Guarantor is party to (with respect to the Magnetation Contracts, to the Issuer's actual knowledge) by any party thereto other than those which have been duly obtained, made or performed, are in full force and effect and do not subject the scope of any such Contract to any material adverse limitation, either specific or general in nature.

(d)     Neither such Guarantor nor any of the other parties to this Agreement and each other Contract such Guarantor is party to (with respect to the Magnetation Contracts, to the Issuer's actual knowledge) is in default in the performance or observance of any of the terms thereof in any manner that, in the aggregate, could reasonably be expected to have a Material Adverse Effect.

(e)     The right, title and interest of such Guarantor in, to and under this Agreement and each other Contract such Guarantor is party to (with respect to the Magnetation Contracts, to the Issuer's actual knowledge) are not subject to any defenses, offsets, counterclaims or claims that, in the aggregate, could reasonably be expected to have a Material Adverse Effect.

(f)     Such Guarantor has delivered to the Trustee and Collateral Agent a complete and correct copy of this Agreement and each other Contract such Guarantor is party to (with respect to the Magnetation Contracts, to the Issuer's actual knowledge), including all amendments, supplements and other modifications thereto.

(g)     No amount payable to such Guarantor under or in connection with this Agreement and each other Contract such Guarantor is party to (with respect to the Magnetation Contracts, to the Issuer's actual knowledge) is evidenced by any Instrument or Chattel Paper which has not been delivered to the Trustee and Collateral Agent.

(h)     None of the parties to this Agreement and each other Contract such Guarantor is party to (with respect to the Magnetation Contracts, to the Issuer's actual knowledge) is a Governmental Authority.

4.4     <u>Litigation</u>.  There is no action, suit, investigation or proceeding pending against, or to the knowledge of such Guarantor, threatened against or affecting, such Guarantor before any arbitrator or any Governmental Authority which in any manner challenges or seeks to prevent, enjoin, alter or materially delay the transactions contemplated by this Agreement.

4.5     <u>Inspections; No Other Representations</u>.  Such Guarantor is an informed and sophisticated person or has engaged expert advisors, experienced in the evaluation of the Transaction and the guarantee provided hereunder.  Such Guarantor has undertaken such investigation and has been provided with and has evaluated such documents and information as it has deemed necessary to enable it to make an informed and intelligent decision with respect to the execution, delivery and performance of this Agreement.  Such Guarantor shall undertake such further investigation and request such additional documents and information as it deems necessary.

4.6     <u>Solvency</u>.  Each of the Guarantors is Solvent.  As used herein, the term "<u>Solvent</u>" means, with respect to any Person on a particular date, that on such date (i) the fair market value of the assets of such Person is greater than the total amount of liabilities (including contingent liabilities) of such Person, (ii) the present fair salable value of the assets of such Person is greater than the amount that will be required to pay the probable liabilities of such Person on its debts as they become absolute and matured, (iii) such Person is able to realize upon its assets and pay its debts and other liabilities, including contingent obligations, as they mature and (iv) such Person does not have unreasonably small capital.

4.7     <u>No Existing Event of Default</u>.  No event of default exists under any contract, indenture, mortgage, loan agreement, note, lease or other agreement or instrument constituting Indebtedness.

## SECTION 5.   COVENANTS

Each Guarantor covenants and agrees with the Trustee and the Holders that, from and after the date of this Agreement until (x) the payment in full of the principal of, accrued and unpaid interest and premium, if any, on the Notes at the stated maturity or upon redemption pursuant to Article 3 of the Indenture, (y) the Indenture has been satisfied and discharged in accordance with Article 12 of the Indenture, or (z) as to the Limited Guarantor, the payment in full of the Obligations of the Limited Guarantor pursuant to Section 2.2(b) hereof:

5.1     <u>Changes in Name, etc.</u>  Such Guarantor shall not, except upon 15 days' prior written notice to the Trustee and the Collateral Agent, (i) change his or her principal residence from that referred to in Section 4.1 or (ii) change his or her name.

5.2     <u>Contracts</u>.  Such Guarantor shall perform and comply in all material respects with all its obligations under this Agreement and each other Contract such Guarantor is party to, subject to any available claims, rights or defenses thereunder.

5.3     <u>Taxes</u>. Such Guarantor shall pay all taxes, assessments and governmental levies except (a) such as are being contested in good faith and by appropriate documentation, negotiations or proceedings or (b) where the failure to effect such payment is not adverse in any material respect to the Trustee, Collateral Agent or the Holders.

5.4     <u>Further Assurances</u>. Such Guarantor shall execute any and all further documents, financing statements, agreements and instruments, and take all further actions that may be required under applicable law, or that the Trustee or Collateral Agent may reasonably request, to facilitate, and to avoid conflict with, the transactions set forth in the Indenture and other Notes Documents, and Asset Purchase Agreement and the Transaction Documents, and the guarantee hereunder.

5.5     <u>Financial Statements</u>.

The Unlimited Guarantor shall deliver, on an annual basis or as reasonably requested more frequently than annually by the Trustee acting on behalf of the Holders of the Notes, financial statements and other assurances of such Guarantor's ability to satisfy such Guarantor's Guarantor Obligations and any other obligations existing under this Agreement.

5.6     <u>Stay, Extension and Usury Laws</u>.  Each of the Guarantors covenants (to the extent that it may lawfully do so) that it shall not at any time insist upon, plead, or in any manner whatsoever claim or take the benefit or advantage of, any stay, extension or usury law wherever enacted, now or at any time hereafter in force, that may affect the covenants or the performance of this Agreement or any provisions of the Indenture incorporated by reference herein; and each of the Guarantors (to the extent that it may lawfully do so) hereby expressly waives all benefit or advantage of any such law, and covenant that it shall not, by resort to any such law, hinder, delay or impede the execution of any power herein granted to the Trustee, but shall suffer and permit the execution of every such power as though no such law has been enacted.

5.7     <u>Notices</u>.

Such Guarantor shall advise the Trustee and the Holders of the Notes promptly, in reasonable detail, of the occurrence of (i) any event which could reasonably be expected to have a Material Adverse Effect on the Issuer or the guarantee hereunder or (ii) any event that is an Event of Default under the Indenture, subject expressly to Section 6 herein.

## SECTION 6.   REMEDIAL PROVISIONS

6.1     <u>Guarantee Shares</u>.  If an Event of Default shall occur and be continuing, (i) the Trustee shall have the right, subject to Section 6.02(b) of the Indenture and the passage of time and other asset liquidation activity described therein, to receive payment in respect of the Guaranteed Obligations (x) in the case of the Unlimited Guarantor, without any limit as to contribution or liability other than as set forth in Section 2.2(a); and (y) in the case of the Limited Guarantor, with limited liability and/or contribution as set forth in Sections 2.2(a) and (b).

6.2     <u>Application of Proceeds</u>.  The Trustee, Collateral Agent or Paying Agent, as applicable, shall apply all or any part of proceeds of the guarantee set forth in Section 2 in payment of the Obligations pursuant to Section 6.13 of the Indenture.

6.3     Events of Default under the Indenture.  Each Guarantor agrees that the provisions of Article 6 of the Indenture as they apply to Guarantors under the Indenture apply to each Guarantor under this Agreement, mutatis mutandis.  For the avoidance of doubt, each of the Events of Default in Section 6.01(a)(3), (4), (6), (7), (10), and (13) of the Indenture are incorporated by reference herein and apply equally to each of the Guarantors under this Agreement, mutatis mutandis, and any Event of Default herein as it relates to a Guarantor hereunder shall be deemed an Event of Default under the Indenture and subject to the limitations on enforcement of rights against the Guarantors set forth in Section 6.02 of the Indenture.

6.4     Subordination.  Each Guarantor hereby agrees that, upon the occurrence and during the continuance of an Event of Default, unless otherwise agreed by the Trustee and Collateral Agent, all Indebtedness owing by it to any Subsidiary of the Issuer shall be fully subordinated to the indefeasible payment in full in cash of such Guarantor's Obligations.

SECTION 7.   THE TRUSTEE

7.1     The Appointment of the Trustee and Collateral Agent as Attorneys-in-Fact, etc.

(a)     Each Guarantor hereby irrevocably constitutes and appoints the Trustee and any officer or agent thereof, with full power of substitution, as its true and lawful attorney-in-fact with full irrevocable power and authority in the place and stead of such Guarantor and in the name of such Guarantor or in its own name, for the purpose of carrying out the terms of this Agreement, to take any and all appropriate action and to execute any and all documents and instruments which may be necessary or desirable to accomplish the purposes of this Agreement.

Anything in this Section 7.1(a) to the contrary notwithstanding, the Trustee agrees that it will not exercise any rights under the power of attorney provided for in this Section 7.1(a) unless (x) the Specified Event of Default has occurred and is continuing or (y) any Deficiency Amount remains outstanding following the Third Standstill Expiration Date.

(b)     If any Guarantor fails to perform or comply with any of its agreements contained herein, the Trustee, at its option, but without any obligation so to do, may perform or comply, or otherwise cause performance or compliance, with such agreement.

(c)     The expenses of the Trustee incurred in connection with actions undertaken as provided in this Section 7.1, together with interest thereon at a rate per annum equal to the highest rate per annum at which interest would then be payable on the Notes, from the date of payment by the Trustee to the date reimbursed by the relevant Guarantor, shall be payable by such Guarantor to the Trustee on demand.

(d)     Each Guarantor hereby ratifies all that said attorneys shall lawfully do or cause to be done by virtue hereof.  All powers, authorizations and agencies contained in this Agreement are coupled with an interest and are irrevocable until this Agreement is terminated and the security interests created hereby are released.

7.2     Authority of the Trustee.  Each Guarantor acknowledges that the rights and responsibilities of the Trustee under this Agreement or the Indenture with respect to any action taken by the Trustee or the exercise or non-exercise by the Trustee of any option, voting right,

request, judgment or other right or remedy provided for herein or the Indenture or resulting or arising out of this Agreement or the Indenture shall, as between the Trustee and the Holders, be governed by the Indenture and by such other agreements with respect thereto as may exist from time to time among them, but, as between the Trustee and the Guarantors, the Trustee shall be conclusively presumed to be acting as agent for the Holders with full and valid authority so to act or refrain from acting, and no Guarantor shall be under any obligation, or entitlement, to make any inquiry respecting such authority.

      7.3    <u>Trustee May File Proofs of Claim</u>.  The Trustee may file proofs of claim and other papers or documents as may be necessary or advisable in order to have the claims of the Trustee (including any claim for the reasonable compensation, expenses, disbursements and advances of the Trustee, their agents and counsel) and the Holders of the Notes allowed in any judicial proceedings relative to the Issuer (or any other obligor upon the Notes, including the Guarantors), its creditors or its property and is entitled and empowered to participate as a member in any official committee of creditors appointed in such matter and to collect, receive and distribute any money or other property payable or deliverable on any such claims.  Any custodian in any such judicial proceeding is hereby authorized by each Holder to make such payments to the Trustee, and in the event that the Trustee shall consent to the making of such payments directly to the Holders, to pay to the Trustee any amount due to it for the reasonable compensation, expenses, disbursements and advances of the Trustee and its agents and counsel, and any other amounts due the Trustee as provided in Section 7.07 of the Indenture.  To the extent that the payment of any such compensation, expenses, disbursements and advances of the Trustee, its agents and counsel, and any other amounts due the Trustee as provided in Section 7.07 of the Indenture out of the estate in any such proceeding, shall be denied for any reason, payment of the same shall be secured by a lien on, and shall be paid out of, any and all distributions, dividends, money, securities and other properties that the Holders may be entitled to receive in such proceeding whether in liquidation or under any plan of reorganization or arrangement or otherwise.  Nothing herein contained shall be deemed to authorize the Trustee to authorize or consent to or accept or adopt on behalf of any Holder any plan of reorganization, arrangement, adjustment or composition affecting the Notes or the rights of any Holder, or to authorize the Trustee to vote in respect of the claim of any Holder in any such proceeding.

      7.4    <u>Other</u>.  Each Guarantor agrees that the provisions of Article 7 of the Indenture applicable to any Guarantor thereunder shall apply to such Guarantor under this Agreement, *mutatis mutandis*.

SECTION 8.   MISCELLANEOUS

      8.1    <u>Amendments in Writing</u>.  None of the terms or provisions of this Agreement may be waived, amended, supplemented or otherwise modified except in accordance with Article 9 of the Indenture.

      8.2    <u>Notices</u>.  All notices, requests and demands to or upon the Trustee or any Guarantor hereunder shall be effected in the manner provided for in Section 13.02 of the Indenture; *provided* that any such notice, request or demand to or upon any Guarantor shall be addressed to such Guarantor at its notice address set forth on Schedule 1.

8.3    No Waiver by Course of Conduct; Cumulative Remedies.  Neither the Trustee nor any Holder shall by any act (except by a written instrument pursuant to Section 8.1), delay, indulgence, omission or otherwise be deemed to have waived any right or remedy hereunder or to have acquiesced in any Default or Event of Default.  No failure to exercise, nor any delay in exercising, on the part of the Trustee or any Holder, any right, power or privilege hereunder shall operate as a waiver thereof.  No single or partial exercise of any right, power or privilege hereunder shall preclude any other or further exercise thereof or the exercise of any other right, power or privilege.  A waiver by the Trustee or any Holder of any right or remedy hereunder on any one occasion shall not be construed as a bar to any right or remedy which the Trustee or any Holder would otherwise have on any future occasion.  The rights and remedies herein provided are cumulative, may be exercised singly or concurrently and are not exclusive of any other rights or remedies provided by law.

8.4    Enforcement Expenses; Indemnification.  (a) Each Guarantor agrees to pay or reimburse each Holder and the Trustee for all its reasonable costs and expenses incurred in collecting against such Guarantor under the guarantee contained in Section 2 or otherwise enforcing or preserving any rights under this Agreement and the other Notes Documents to which such Guarantor is a party, including, without limitation, the reasonable fees and disbursements of counsel (including the allocated fees and expenses of in-house counsel) to each Holder and of counsel to the Trustee.

(b)    Each Guarantor agrees to pay, and to save the Trustee and the Holders harmless from, any and all liabilities with respect to, or resulting from any delay in paying, any and all stamp, excise, sales or other taxes which may be payable or determined to be payable in connection with any of the transactions contemplated by this Agreement.

(c)    Each Guarantor agrees to pay, and to save the Trustee and the Holders harmless from, any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever with respect to the execution, delivery, enforcement, performance and administration of this Agreement to the extent the Issuer would be required to do so pursuant to Section 7.07 of the Indenture.

(d)    The agreements in this Section 8.4 shall survive repayment of the Obligations and all other amounts payable under the Indenture and the other Notes Documents.

8.5    Successors and Assigns.  This Agreement shall be binding upon the successors and assigns of each Guarantor and shall inure to the benefit of the applicable Beneficiary Parties and their successors and assigns; *provided* that no Guarantor may assign, transfer or delegate any of its rights or obligations under this Agreement without the prior written consent of the Trustee.

8.6    Calculations.  The Guarantors hereto acknowledge that all calculations of the Calculation Agent, in the absence of manifest error, shall be conclusive for all purposes and binding and neither the Trustee nor the Paying Agent shall have the duty to verify determinations of interest rates made by the Calculation Agent.

8.7     Counterparts.  This Agreement may be executed by one or more of the parties to this Agreement on any number of separate counterparts (including by email or telecopy), and all of said counterparts taken together shall be deemed to constitute one and the same instrument.

8.8     Severability.  Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

8.9     Section Headings.  The Section headings used in this Agreement are for convenience of reference only and are not to affect the construction hereof or be taken into consideration in the interpretation hereof.

8.10    Integration.  This Agreement and the other Notes Documents represent the agreement of the Guarantors and the applicable Beneficiary Parties with respect to the subject matter hereof and thereof, and there are no promises, undertakings, representations or warranties by the Trustee or any Holder relative to subject matter hereof and thereof not expressly set forth or referred to herein or in the other Notes Documents.

8.11    **GOVERNING LAW.  THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAW OF THE STATE OF NEW YORK.**

8.12    Submission To Jurisdiction; Waivers.  Each Guarantor hereby irrevocably and unconditionally:

(a)     submits for itself and its property in any legal action or proceeding relating to this Agreement, or for recognition and enforcement of any judgment in respect thereof, to the non-exclusive general jurisdiction of any state or federal court sitting in the Borough of Manhattan in the City of New York, and appellate courts from any thereof;

(b)     consents that any such action or proceeding may be brought in such courts and waives any objection that it may now or hereafter have to the venue of any such action or proceeding in any such court or that such action or proceeding was brought in an inconvenient court and agrees not to plead or claim the same;

(c)     agrees that service of process in any such action or proceeding may be effected by mailing a copy thereof by registered or certified mail (or any substantially similar form of mail), postage prepaid, to such Guarantor at its address referred to in Section 8.2 or at such other address of which the Trustee shall have been notified pursuant thereto;

(d)     agrees that nothing herein shall affect the right to effect service of process in any other manner permitted by law or shall limit the right to sue in any other jurisdiction; and

(e)     waives, to the maximum extent not prohibited by law, any right it may have to claim or recover in any legal action or proceeding referred to in this Section any special, exemplary, punitive or consequential damages.

8.13    <u>Acknowledgements</u>.  Each Guarantor hereby acknowledges that:

(a)     it has been advised by counsel in the negotiation, execution and delivery of this Agreement and the other Notes Documents to which it is a party (if any);

(b)     neither the Trustee nor any Holder has any fiduciary relationship with or duty to any Guarantor arising out of or in connection with this Agreement or any of the other Notes Documents, and the relationship between the Guarantors, on the one hand, and the Trustee and Holders, on the other hand, in connection herewith or therewith is solely that of debtor and creditor; and

(c)     no joint venture is created hereby or by the other Notes Documents or otherwise exists by virtue of the transactions contemplated hereby among the Holders or among the Guarantors and the Holders.

8.14    <u>U.S.A. PATRIOT Act</u>. The parties hereto acknowledge that in accordance with Section 326 of the U.S.A. PATRIOT Act, the Trustee is required to obtain, verify, and record information that identifies each Person or legal entity that establishes a relationship or opens an account with the Trustee.  The parties to this Agreement agree that they shall provide the Trustee with such information as it may request in order for the Trustee to satisfy the requirements of the U.S.A. PATRIOT Act.

8.15    **<u>WAIVER OF JURY TRIAL</u>.**  EACH OF THE GUARANTORS, THE TRUSTEE AND COLLATERAL AGENT HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE INDENTURE, THE NOTES, THE OTHER NOTES DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED HEREBY AND THEREBY.

8.16    <u>Effectiveness of Guarantee Agreement</u>.

No party shall have any rights, obligations or other benefits or responsibilities hereunder unless and until such time as the parties have issued the Notes hereunder in connection with the Closing (as defined in the APA), and the Closing has occurred; provided that the Trustee shall be entitled to an Officers' Certificate and Opinion of Counsel that such closing has occurred and that all conditions precedent have been satisfied.

[*Signatures on following page*]

IN WITNESS WHEREOF, each of the undersigned has caused this Guarantee Agreement to be duly executed and delivered as of the date first above written.

ERP IRON ORE, LLC

By

    By:   _____
           Name:
           Title:

ERP COMPLIANT COKE, LLC

By

By: _____
Name:
Title:

#4846-0297-3755

THOMAS MATTHEW CLARKE, as Unlimited
Guarantor


By: _____
        Name:  Thomas Matthew Clarke


ANA MERCEDES CLARKE, as Limited
Guarantor


By: _____
        Name:  Ana Mercedes Clarke

WILMINGTON SAVINGS FUND SOCIETY, FSB
as Trustee

By:   _____
Name:
Title:

#4846-0297-3755

<u>Schedule 1</u>

NOTICE ADDRESSES OF GUARANTORS

For all Guarantors:

c/o ERP Compliant Fuels, LLC
15 Appledore Lane
Natural Bridge, Virginia 24578
Attention: Tom Clarke
Email: Tom.Clarke@kissito.org

<u>Schedule 2</u>

DESCRIPTION OF GUARANTEE SHARES

**Guarantee Shares:**

| <u>Guarantee Shares Issuer</u> | <u>Percentage ownership</u> |
|---|---|
| Seneca Coal Resources, LLC | 38.5% |
| Seminole Coal Resources, LLC | 38.5% |
| Conuma Coal Resources Limited | 38.5%[2] |

---

[2] The Limited Guarantor owns, indirectly, 38.5% of Conuma Coal Resources Limited, which is directly owned 100.0% by ERP Coal Resources Limited through its holding of 1,000,000 Class A Voting common shares in Conuma Coal Resources Limited, evidenced by the share certificate labeled "3AC".

Case 1:16-cv-02034-GAB   Doc #: 7-3   Filed: 12/20/16   52 of 52   PageID #: 98

<u>Schedule 3</u>

LOCATION OF JURISDICTION OF PRIMARY RESIDENCE

| <u>Guarantor</u> | <u>Location of Primary Residence</u> |
|---|---|
| Tom Clarke | Commonwealth of Virginia |
| Ana Clarke | Commonwealth of Virginia |