UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CLIFFS NATURAL RESOURCES INC. | ) | CASE NO. 1:16-cv-03034-CAB |
| | ) | |
| Plaintiff, | ) | JUDGE C. A. Boyko |
| | ) | |
| v. | ) | |
| | ) | |
| SENECA COAL RESOURCES, LLC, et al. | ) | **Memorandum in Support** |
| | ) | |
| Defendants. | ) | |
| | ) | |

**Memorandum in Support of Motion to Dismiss**

This motion to dismiss offers the Court an early opportunity to streamline routine commercial litigation between two corporate entities (Plaintiff Cliffs and Defendant Seneca) by an early dismissal of the individual Defendants. While some of these individuals may be future witnesses in the dispute between Cliffs and Seneca, it will become clear to the Court that the claims against them are either moot, non-existent or wholly illusory and, therefore, must be dismissed. These individuals should not be held "hostage" to a complaint brought on a faulty premise and then suffer the burden of the attendant costs and nuisance that come with having to defend oneself in federal court against a large corporate litigant. Once the individual Defendants are dismissed, Cliffs and Seneca will be able to litigate the post-transaction disputes that have arisen between them in a more efficient manner—a manner that will benefit the Court and all parties.

 **I. Background**

  **A. The Breach of Contract Claims**

This litigation arises from post-transaction disputes over certain types of contractual non-performance between Cliffs and Seneca described in the Complaint that exist by virtue of a Unit

1

Purchase Agreement whereby Seneca acquired certain assets from Cliffs and a Cliffs-related entity. Cliffs asserts various breach of contract and indemnification claims against Seneca stemming from the transaction. Additionally, Cliffs asserts a claim for the payment of certain other amounts that accrued to it because of the BB&T settlement agreement. None of the individual Defendants are obligated to Cliffs on any of these claims by contract, guarantee, or otherwise. Fundamentally, this litigation is a relatively straight-forward set of contract claims between sophisticated corporate parties. As will be demonstrated, there is now no room for individuals in this litigation.

### B. The Future Transfer Claims

Additionally, Plaintiff has pleaded a fraudulent transfer claim against all Defendants. When it filed its complaint, Plaintiff believed that future, but imminent, business transactions were planned by Defendants that would impair Plaintiff's ability to collect on its post-transaction contract claims. The Plaintiff has only pleaded claims for potential future transfers and *not* for past transfers, if any. (See, Complaint ¶ 26-32 and ¶ 45-49).

Shortly after the filing of the complaint and within 20 days of the demand letter described by Plaintiff in Paragraph 32 of its complaint, the Defendants provided two declarations from the individual Defendants expressly establishing that no corporate restructuring was planned for December 31, 2016 or otherwise, and, further, that Seneca assets were not being used for purposes described in Paragraph 30, i.e., "to use the assets from Seneca to fund affiliate companies." Defendants also offered express assurances to Plaintiff that they would provide thirty-day's advance written notice to Plaintiff if such a future transfer was contemplated. These declarations are Exhibits A and B to this memorandum.

A careful review of the complaint and the declarations, leads to the conclusion that no viable cause of action has been pleaded against the individual Defendants. No viable cause of action remains against Defendant Seneca with respect to the future transfer allegations. Thus, several grounds for dismissal present themselves under the Federal Rules.

## II.     The Claims Against the Individual Defendants Are Moot. The Court Lacks Subject Matter Jurisdiction to Hear the Claims.

The Court must dismiss the Plaintiff's complaint against the individual Defendants because there is no case or controversy presently existing between these individuals and Plaintiff. No breach of contract claims have been pleaded against these individuals. The future transfer claim no longer exists, since December 31st (2016) has now passed, and <u>no</u> restructuring of assets occurred. No future restructuring is contemplated. The complaint fails to make any claims with respect to past transfers, if any. Clearly, the complaint is now moot with respect to the individual Defendants. The Court now lacks subject matter jurisdiction over the individual Defendants and they must be dismissed from the action under F.R.C.P. 12(b)(1).

Let's start with the civil procedure truisms that we are all familiar with. Federal district courts are courts of limited jurisdiction under Article III of the U.S. Constitution. This Court may, at any time, review its own jurisdiction upon the request of a party or *sua sponte* under its own inherent authority and, of course, under F.R.C.P 12(h)(3). As a court of limited jurisdiction, the Court recognizes that its jurisdiction does not extend beyond justiciable cases and controversies. Unlike a court of general jurisdiction, the Court lacks jurisdiction to hear speculative or hypothetical claims. While a hypothetical claim may be justiciable, such a claim is not a case or controversy for purposes of Article III jurisdiction. To the extent that such a claim is hypothetical the Court is divested of subject matter jurisdiction. There must be an actual case or controversy

between the parties for subject matter jurisdiction to arise. This is no longer the case with respect to the individual Defendants. Case law on these issues is reviewed *infra* beginning at page 6.

A careful review of the complaint shows us that any justiciable claim brought by Plaintiff has lapsed into mootness by the passage of time. Plaintiff's "anticipatory" claims of fraudulent conveyance expired on December 27, 2016 when Plaintiff learned that the transfers it anticipated had not occurred and would not occur.

Let's review the complaint by examining each of the relevant Plaintiff's claims. Note that they are all cast prospectively, that is, as contingent future possibilities and not as past occurrences.

> "26. Despite Seneca owing money to Cliffs under the UPA and the BB&T Settlement Agreement, upon information and belief, Defendants are planning to transfer assets from Seneca to its affiliates or owners (including Defendants) instead of paying off its legitimate debts to Cliffs.
>
> 27. Upon information and belief, Defendants plan to transfer assets from Seneca to Defendant Thomas M. Clarke prior to December 31, 2016 as part of a "reorganization."
>
> 28. Upon information and belief, Mr. Clarke is not a legitimate creditor of Seneca.
>
> 29. Upon information and belief, the assets transferred to Mr. Clarke by Defendants will not be for value.
>
> 30. Upon information and belief, instead of paying off its debts to Cliffs, Defendants are also planning to use the assets from Seneca to fund affiliate companies.
>
> 31. Agents of Seneca have stated to Cliffs that Seneca does not have the funds to pay its debts to Cliffs. Despite these statements, Defendants still plan to transfer Seneca's assets rather than pay the debts to Cliffs.
>
> 32. On December 7, 2016, counsel for Cliffs sent a letter to Seneca and Mr. Clarke stating that "no transfer of money should be made to you or others until Cliffs' rights to payment from Seneca (including the replacement of the collateral for the workers' compensation policies) have been satisfied by Seneca. Otherwise any such transfer may be deemed a fraudulent conveyance under Ohio Rev. Code Ann. § 13336.04(A)(1) and (2). Please provide [Cliffs' counsel] written confirmation that Seneca will not make any such transfers until the debts due Cliffs by Seneca are paid in full." Neither Seneca nor Mr. Clarke has provided any confirmation (written

4

or otherwise) that such transfers <u>will</u> not be made.  Upon information and belief, instead of using Seneca's funds for payment to Cliffs in satisfaction of the debt, Defendants <u>plan to</u> transfer and/or divert monies and/or funds from Seneca to affiliated companies and/or owners with the actual intent to hinder, delay, or defraud Cliffs.

46. The affiliated companies and owners (including Defendants) are insiders of Seneca with knowledge of the debt owed to Cliffs.

47. Upon information and belief, Seneca <u>will</u> not receive any equivalent value in exchange for the transfer or <u>proposed</u> transfer of funds.

48. In addition, at the time of the <u>proposed</u> transfer, upon information and belief Seneca (a) <u>will be</u> engaged in a business or a transaction for which the remaining assets of Seneca <u>will be</u> unreasonably small in relation to the business or transaction and/or (b) <u>will intend</u> to incur, or believed or reasonably should have believed that it <u>will incur</u>, debts beyond the its ability to pay as they became due.

49. If the transfer is allowed <u>to proceed</u>, Cliffs will suffer damages."[1]

On December 27, 2016, the Defendants produced declarations made under penalty of perjury that established that Plaintiff's feared and anticipated future transfers for December 31, 2016 had not taken place and would not take place.  Though both declarations are provided as exhibits to this Motion quoting from one will suffice, since both are similar in content:

> "No "Transfer" in connection with the "Restructuring" has taken place and none is contemplated at this time. If a transfer is contemplated in the future, the undersigned agree to provide Cliffs with written notice thirty (30) days prior to the contemplated transfer. […]  The assets used to fund ERP Iron Ore's purchase of Magnetation derive from outside, European investors."  (Exhibit A, Declaration of Thomas and Ana Clarke, p. 1) [2]

*No transfer occurred on December 31, 2016 and no funding was provided for the acquisition of Magnetation*.  The planned future actions that the Plaintiff claimed would take place simply did not.  These claims are now moot and, therefore, should be dismissed forthwith.

---

[1] Plaintiff's Complaint, filed December 20, 2016, underline added.

[2] See also, Exhibit B, Declaration of Kenneth McCoy and Jason McCoy.

To be a fraudulent transfer under the Ohio statute, the transfer must have been made "with actual intent to hinder, delay, or defraud any creditor of the debtor." *Individual Bus. Servs. v. Carmack*. 2013-Ohio-4819 (Ohio Ct. App., Montgomery County, Nov. 1, 2013)[3]. The anticipated future transfers to the individual Defendants that the Plaintiff feared and pleaded against were simply not made. Clearly, these claims are now moot. When reminded that it lacks jurisdiction, it behooves the Court to give such plea careful consideration; particularly here, *where there is the disproportionate legal power of a corporate entity pursuing a set of individuals on claims that have been shown not to exist against them.*

Under Federal Rule of Civil Procedure 12(b)(1), Cliffs bears the burden of establishing jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *McNutt v. Gen. Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 182 (1936). To invoke federal court jurisdiction, a party must establish the existence of a "justiciable controversy" with the adverse party – one that is "definite and concrete, touching the legal relations of parties having adverse legal interests." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937); *see also Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982).

The doctrine of standing flows from the Article III justiciability requirement. *See Allen v. Wright*, 468 U.S. 737, 750, 752 (1984); *La. Envtl. Action Network v. Browner*, 87 F.3d 1379, 1382 (D.C. Cir. 1996). Standing "focuses on the appropriateness of a party bringing the questioned controversy to the court," and requires that "anyone who would invoke the aid of the courts in resolving a complaint must allege, at a minimum, an actual or imminent injury personal to the plaintiff that is fairly traceable to the defendant's conduct and that is likely to be redressed by the requested relief." *La. Envtl. Action Network*, 87 F.3d at 1382; *see also Lujan*, 504 U.S. at 560-61;

---

[3] The Ohio law on fraudulent transfer is reviewed at length in Section III of this Memorandum.

*Valley Forge*, 454 U.S. at 472. Plaintiff Cliffs does not have standing because the injury it complains of, to wit, the future transfer is not "actual or imminent". The Court cannot provide redress for injuries that are entirely illusory; injuries that might have occurred, but, in fact, did not.

Both the law of standing and the law of mootness derive from Article III's requirement that the judicial power of the United States extends only to cases and controversies. *Friends of the Earth v. Laidlaw Environmental Services, Incorporated*, 528 U.S. 167, 180 (2000). While the law of standing involves whether the plaintiff had suffered or is threatened with injury in fact at the time of the filing of the complaint, *the law of mootness inquires whether events subsequent to the filing of suit have eliminated the controversy between the parties*. Generally, the burden of showing standing rests with the plaintiff, while the burden of demonstrating mootness lies with the defendant. *Id.*, 190.

Like standing, because mootness implicates the court's jurisdiction, it can be raised at any time. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.23 (1997). Moreover, counsel for the plaintiff has a duty to bring to the court's attention facts which may raise an issue of mootness. *Buckhannon Board and Care Home, Incorporated v. West Virginia Department of Health and Human Resources*, 532 U.S. 598, 608-10 (2001). A textbook example of mootness is demonstrated by *DeFunis v. Odegaard*, 416 U.S. 312 (1974). The plaintiff was a student who had been denied admission to law school, and had then been provisionally admitted during the pendency of the case. Because the student was slated to graduate within a few months at the time the decision was rendered, and there was no action the law school could take to prevent that, the Court determined that a decision on its part would have no effect on the student's rights. Therefore, the case was dismissed as moot. *Id. Alvarez v. Smith* has a similar mootness outcome; the U.S.

Supreme Court declined jurisdiction once it learned that the parties had resolved various personal property claims related to forfeited assets. 588 U.S. 87 (2009).

In this case there is no longer any actual controversy between the parties regarding transfers that never took place. An actual controversy must be extant at all stages of review, not merely at the time the complaint is filed. *Alvarez v. Smith,* 588 U.S. 87 (2009); *Preiser* v. *Newkirk*, 422 U. S. 395, 401 (1975); see also, *Steffel* v. *Thompson*, 415 U. S. 452, 459, n. 10 (1974).

A motion pursuant to F.R.C.P. 12(b)(1), like this one, raises the fundamental question whether the federal district court has subject matter jurisdiction over the action before it. Typically, the court is bound to consider a Rule 12(b)(1) motion first, since a Rule 12(b)(6) challenge becomes moot if the court lacks subject matter jurisdiction. *In re Title Ins. Antitrust Litig.*, 702 F. Supp. 2d 840 (NDO 2009), citing *Bell v. Hood*, 327 U.S. 678 (1946).

By the instant motion, the individual Defendants attack the subject matter jurisdiction of the Court on a factual basis. This factual basis is set forth in their declarations and demonstrates that the subject of the complaint against them--the potential future transfers--did not occur and were not planned to occur. (see Exhibit A, Exhibit B.) A factual attack evaluates the actual existence of subject matter jurisdiction and the Court is free to consider extrinsic evidence, like these declarations, and may weigh the evidence of its own jurisdiction without affording the plaintiff the presumption of truthfulness. *Id.,* citing *Abdelkhaleq v. Precision Door*, 2008 U.S. Dist. LEXIS 64464 (NDO 2008). See also, *Wenz v. Rossford Ohio Transp. Improvement Dist.*, 392 F. Supp. 2d 931 (NDO 2005). When a defendant brings a factual challenge to subject matter jurisdiction, a court "need not presume the truthfulness of the plaintiffs' allegations." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) (citing Moore's Federal Practice, Par. 12.30[4], at 12-38 (3d ed. 1999)).

The Plaintiff bears the burden of proving subject matter jurisdiction in order to survive a motion under Rule 12(b)(1). *Wenz v. Rossford Ohio Transp. Improvement Dist*., 392 F. Supp. 2d 931 (NDO 2005). Finally, a motion under Rule 12(b)(1) is not transformed into a motion for summary judgment under Rule 56 when a court examines evidence with respect to its own jurisdiction on a factual basis. *Rogers v. Stratton Inds., Inc.,* 798 F. 2d 913 (6th Cir. 1986).

The claims against the individual Defendants suffer from the problem of "mootness". Because the claims were predicated upon a contingent future event set to occur on December 31, 2016, that, in fact, did <u>not</u> occur, the claims have no viability and are now moot. As moot, the case against the individual Defendants is no longer justiciable and within the subject matter jurisdiction of the Court and, therefore, should be dismissed forthwith pursuant to F.R.C.P. 12(b)(1). [4]

### III. The Complaint Fails to State a Claim Against the Individual Defendants Upon Which Relief Can Be Granted.

Beyond the defect of mootness that divests the Court of jurisdiction of the claims asserted against the individuals here, there also remains the fundamental failure of Plaintiff to plead a complaint against the individual Defendants that states claims upon which this Court can grant relief.

Clearly, Plaintiff has failed to assert any basis in contract law that would require any of the individual Defendants to pay any sum of money to Plaintiff in satisfaction of Seneca's alleged contractual obligations. Individual Defendants are strangers to the Plaintiff in the classic sense.

---

[4] While the mootness argument appears strongest, the Court may also recognize that it also lacks subject matter jurisdiction over the claims against the individual Defendants based on the doctrine of ripeness. "Ripeness" refers to the readiness of a case for litigation: "a claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296 (1998). This is exactly the situation of the Plaintiff's claims against these individuals. The contingent future event pleaded did not occur.

Just as the employees, executives, spouses of executives, and shareholders of Cliffs Natural Resources are strangers to the transaction between Cliffs and Seneca, so too are the employees, executives (and spouses), and shareholders of Seneca Coal Resources. The entire evolution of corporate law in America since the late 19th Century has been to insulate individuals from liability for the acts of the corporations that employ them or that they invest in (except in very specific narrow situations.) No breach of contract claims have been pleaded against the individual Defendants.

The Plaintiff asserted an entirely contingent theory of recovery against the individual Defendants predicated on its belief that one or more future transfers of assets were to be made to one or more of the individual Defendants in the future. Each individual Defendant has sworn under penalty of perjury that no such transfers were made to them. (See, Exhibit A and Exhibit B). No claims have been pleaded by the Plaintiff with respect to any past transfers made to the individual Defendants. There are no actionable fraudulent transfer claims against the individual Defendants.[5]

Ohio Revised Code §1336.04 allows a creditor two ways to establish a claim for fraudulent transfer; one direct and one inferential. The statutory elements are straightforward. "[P]ursuant to Ohio Revised Code § 1336.04(A)(1), a creditor must show: (1) a conveyance or incurring of a debt; (2) made with actual intent to defraud, hinder, or delay; (3) present or future creditors." *Blood v. Nofzinger,* 162 Ohio App. 3d 545 (6th Dist. No. H04031, 2005-Ohio-3859) citing *Atlantic Veneer Corp. v. Robbins*, (4th Dist. No. 01CA678, 2002-Ohio-5363).

---

[5] To the extent that transfers have been made to other parties other than these individuals Defendants, the Plaintiffs has failed to plead them into its case and the Complaint may also be dismissed under F.R.C.P. 12(b)(7) for failure to join a necessary party under Rule 19.

A creditor seeking to set aside a transfer as fraudulent has the ultimate burden of proving, by clear and convincing evidence, the debtor's actual intent pursuant to R.C. 336.04(A)(1), Ohio has recognized that proof of actual intent will often be impossible to establish. *Wagner v. Galipo* (1994), 97 Ohio App.3d 302, 309, citing *Stein v. Brown* (1985), 18 Ohio St.3d 305, 308. Thus, direct evidence of fraudulent intent is not essential. *Id*.

A creditor may establish a debtor's actual fraudulent intent if the circumstances demonstrate "badges of fraud"; inferences from circumstances surrounding the transaction may also be used to establish a badge of fraud. *Blood v. Nofzinger,* 162 Ohio App. 3d 545 (at ¶36). These common law "badges" have now been codified in the Ohio statute as follows:

> "(B) In determining actual intent under division (A)(1) of this section, consideration may be given to all relevant factors, including, but not limited to, the following:
>
> (1) Whether the transfer or obligation was to an insider;
>
> (2) Whether the debtor retained possession or control of the property transferred after the transfer;
>
> (3) Whether the transfer or obligation was disclosed or concealed;
>
> (4) Whether before the transfer was made or the obligation was incurred, the debtor had been sued or threatened with suit;
>
> (5) Whether the transfer was of substantially all of the assets of the debtor;
>
> (6) Whether the debtor absconded;
>
> (7) Whether the debtor removed or concealed assets;
>
> (8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
>
> (9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

11

(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred;

(11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor."[6]

First, it seems worth noting that each element has been drafted in the past tense and that to infer actual intent from these elements involves an inquiry into actions and events that have actually taken place, not contingent or possible actions or events that may occur in the future. It seems clear from a plain reading of the statute, that the Plaintiff cannot establish the basic fact that a transfer has occurred between Seneca and one or more of the individual Defendants, much less trigger the inferential elements to establish intent. Since no transfer was made to these individual Defendants, no conceivable violation of the Ohio statute has been pleaded.

A plaintiff cannot prevail against a motion to dismiss if its complaint fails to present the Court any allegations that demonstrate a right to recovery. *Abdelkhaleq v. Precision Door*, 2008 U.S. Dist. LEXIS 64464 (NDO 2008). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain either direct or inferential allegations respecting all of the material elements to sustain recovery under some viable legal theory. *Mezibov v. Allen,* 441 F. 3rd 712, 716 (6th Cir. 2005). Here Plaintiff can do neither.

As reflected in the cases discussed *infra*, the correct standard on a motion to dismiss does not require the Court to accept conclusory statements or speculative allegations, like the contingent though ultimately incorrect statements, pleaded by the Plaintiff in the instant case. The United States Supreme Court has, in recent years, clarified and strengthened the standards for pleading a complaint under F.R.C.P. 8.

---

[6] Ohio Revised Code § 1336.04(B).

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) (citing and quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Accordingly, even though a plaintiff's allegations are "accepted as true" on a motion to dismiss, for the complaint to survive it "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Given the declarations of the individual Defendants, sworn under penalty of perjury, the Plaintiff cannot state a claim for relief that is plausible on its face under the standards of *Iqbal* and *Twombly*.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556.)[7] In the instant case, that inference cannot be reasonably drawn by this Court because the alleged misconduct never occurred. Thus, under *Iqbal* and *Twombly,* Plaintiffs' allegations are insufficient to state a claim. Plaintiffs' allegations do not satisfy the pleading standards required to withstand an F.R.C.P. 12(b) motion to dismiss. The Plaintiff has failed to state a claim upon which relief can be granted and, therefore, the claim should be dismissed under F.R.C.P. 12(b)(6).

### IV. The Complaint Fails to State a Claim Against Defendant Seneca Upon Which Relief Can Be Granted with Respect to the Transfer Claims.

Defendant Seneca recognizes that there exists a justiciable case or controversy with Plaintiff to vest this court with subject matter jurisdiction with respect to Plaintiff's post-

---

[7] The Sixth Circuit has similar jurisprudence. *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3rd 545 (6th Cir, 2007).

transaction breach of contract claims. The BB&T settlement agreement contains a specific retention of jurisdiction by the Court.

However, based on the rationale and authority presented in Section III above, Plaintiff has failed to state a viable claim against Seneca that it has improperly transferred funds to the individual Defendants or others.[8] On December 27, 2016, Seneca provided declarations that stated that no restructuring transaction was planned to take place on December 31, 2016. Further, these declarations stated that the funding for the Magnetation acquisition were from non-Seneca sources. (see, Exhibit A and Exhibit B.) Since no transfer was made to any of the individual Defendants, the Plaintiff has not made a viable claim under Ohio law that the Court can provide relief upon.[9]

Therefore, the fraudulent transfer claim with respect to Defendant Seneca should also be dismissed by the Court pursuant to Rule 12(b)(6).

        Respectfully submitted,

        s/Mark D. Kindt,
        Counsel for the Defendants

        Mark D. Kindt (0019569)
        Attorney-at-Law
        16004 Detroit Ave., Suite 4
        Lakewood, Ohio 44107
        (216) 521-6024

Counsel for Defendants certifies that this memorandum complies with the page limitation requirements of NDO Local Rule 7.1(f).

---

[8] For the convenience of the Court, the arguments set forth in Section III above will not be repeated here. The same legal analysis clearly applies.

[9] As a business in its normal course, Seneca (just like Plaintiff) makes routine transfers and payments on a daily basis. If Plaintiff has an actual claim with respect to a specific transfer(s) or a specific payee(s), then the proper course for it should be to seek leave to amend its Complaint to plead such claims.