UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CLIFFS NATURAL RESOURCES INC.<br>200 Public Square, 33rd Floor<br>Cleveland, OH 44114<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>SENECA COAL RESOURCES, LLC,<br>15 Appledore Lane<br>P.O. Box 87<br>Natural Bridge, Virginia 24578<br><br>THOMAS M. CLARKE<br>16620 Lee Highway<br>Buchanan, VA 24066<br><br>ANA M. CLARKE<br>16620 Lee Highway<br>Buchanan, VA 24066<br><br>KENNETH R. MCCOY<br>7608 Trail Blazer Trail<br>Wake Forest, NC 27587<br><br>JASON R. MCCOY<br>9113 Linslade Way<br>Wake Forest, NC 27587<br><br>LARA NATURAL RESOURCES, LLC<br>5228 Valleypointe Parkway<br>Suite 1, Building B<br>Roanoke, VA 24019<br><br>also serve<br><br>LARA NATURAL RESOURCES, LLC<br>c/o Corporation Service Company<br>Bank of America Center, 16th Floor | CASE NO. 1:16-cv-03034<br><br>JUDGE CHRISTOPHER A. BOYKO<br><br><br>**FIRST AMENDED COMPLAINT** |

| | |
|---|---|
| Richmond, VA 23219 | ) |
| | ) |
| IRON MANAGEMENT II, LLC | ) |
| 6801 Falls of Neuse Rd., Suite 100 | ) |
| Raleigh, NC  27615 | ) |
| | ) |
| Defendants. | ) |

Plaintiff Cliffs Natural Resources Inc. ("Cliffs"), for its First Amended Complaint against Defendants Seneca Coal Resources, LLC ("Seneca"), Thomas M. Clarke, Ana M. Clarke, Kenneth R. McCoy, Jason R. McCoy (the "Individual Defendants"), Lara Natural Resources, LLC ("Lara Natural Resources") and Iron Management II, LLC ("Iron Management" and along with Seneca, the Individual Defendants, and Lara Natural Resources, the "Defendants") specifically states and avers the following:

## INTRODUCTION

1. This lawsuit arises from a breach by Seneca of its contract with Cliffs regarding the sale of certain mining assets.  Instead of complying with its post-closing requirements and paying monies due to Cliffs, Seneca has failed and/or refused to do so, causing damages to Cliffs.

2. In addition, Seneca and the Individual Defendants have conspired to and have fraudulently transferred certain of Seneca's assets to Lara Natural Resources, Iron Management, and other "affiliates" of Seneca rather than paying money due and owing to Cliffs.  Upon information and belief, Lara Natural Resources, Iron Management, and the "affiliates" are not legitimate creditors of Seneca and those conveyances were not for value, but rather made with the intent to hinder, delay, or defraud Cliffs.

## THE PARTIES, JURISDICTION, AND VENUE

3. Cliffs is an Ohio corporation and, for 170 years, Cliffs has had, and continues to have, its principal place of business in Cuyahoga County, Ohio.  Cliffs is a leading mining and

2

9088952.1

natural resources company and is a major supplier of iron ore pellets to the North American steel industry from its mines and pellet plants located in Michigan and Minnesota. Cliffs also operates an iron ore mining complex in Western Australia.

4. On information and belief, Seneca is a Delaware limited liability company with its principal place of business in Virginia. Upon information and belief, its members are Kenneth R. McCoy, Jason R. McCoy, and Thomas M. Clarke – all citizens of Virginia and/or North Carolina, and none of its members are citizens of Ohio.

5. On information and belief, Thomas M. Clarke is a citizen of Virginia.

6. On information and belief, Ana M. Clarke is a citizen of Virginia.

7. On information and belief, Kenneth R. McCoy is a citizen of North Carolina.

8. On information and belief, Jason R. McCoy is a citizen of North Carolina.

9. On information and belief, Lara Natural Resources is a Virginia limited liability company with its principal place of business in Virginia. Upon information and belief, its sole member is Ana M. Clarke, a citizen of Virginia, and none of its members are citizens of Ohio.

10. On information and belief, Iron Management is a North Carolina limited liability company with its principal place of business in North Carolina. Upon information and belief, its majority members are Kenneth R. McCoy and Jason R. McCoy; both are citizens of North Carolina, and none of its members are citizens of Ohio.

11. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and, upon information and belief, complete diversity exists among the parties.

12. This Court has personal jurisdiction over the Defendants pursuant to R.C. § 2307.382(1), (3), and (6).

13. Venue is proper in this forum because this matter arises from a July 2016 Settlement Agreement, over which this Court specifically retained jurisdiction. Further, venue is proper because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district. *See* 28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS

### The Unit Purchase Agreement

14. On December 22, 2015, Cliffs, CLF Pinnoak LLC, and Seneca entered into a Unit Purchase Agreement (the "UPA"), whereby Cliffs, through CLF PinnOak LLC, agreed to sell the outstanding equity interests of Cliffs North American Coal LLC ("CNAC") to Seneca. The value of the transaction at closing was $268 million, based on Seneca assuming all liabilities of CNAC and its subsidiaries and agreeing to an earn-out of up to $50 million for which Seneca would pay Cliffs contingent upon the terms of a revenue sharing plan. The UPA is not attached hereto as it is confidential and Seneca has a copy in its possession.

15. Among the liabilities that were assumed by Seneca under the UPA were all workers' compensation obligations in respect of CNAC's and its subsidiaries' current and former employees and workers.

16. In addition to Seneca's assumption of liability, pursuant to the UPA, Seneca promised to perform certain post-closing requirements, including replacing certain bonds and guarantees, as well as reimbursing Cliffs for certain expenses made prior to and after entering into the UPA. With respect to replacing certain bonds, Seneca promised to file replacement surety bonds and cause the release of Cliffs' bonds no later than February 5, 2016, *i.e.* within 45 days of the Closing Date (December 22, 2015).

17. The parties also agreed to a broad indemnification provision, whereby Seneca agreed to indemnify and hold harmless Cliffs from any and all Losses arising out of or resulting

9088952.1

from the breach of any agreement of Seneca in the UPA, the Bonds and Guarantees (as defined in the UPA), and certain legal matters that were disclosed in the UPA, including attorneys' fees.

### Seneca's Failure to Perform its Duties Under the UPA

18. Despite its clear responsibility to replace certain bonds within 45 days, Seneca failed to do so. Instead, it made several cash transfers to Lara Natural Resources, Iron Management, and "affiliates" during the period in which Seneca was obligated to replace the bonds. Seneca also failed to cause the timely release of certain guarantees and letters of credit. These failures forced Cliffs to incur certain out-of-pocket costs. Seneca has failed to reimburse Cliffs for those costs.

19. Despite its clear and acknowledged responsibility to reimburse Cliffs for certain expenses, such as lease repayments, workers' compensation costs, medical out-of-pocket costs, bond premiums, payroll funding and services, and certain legal costs, Seneca has failed and/or refused to reimburse Cliffs for those expenses.

20. Despite Seneca's acknowledgment of the need for Seneca to obtain workers' compensation insurance for existing claims and replace certain letters of credit, Seneca has failed to do so. Seneca has also failed to assume the administration and funding of ongoing workers' compensation matters, as required and acknowledged by Seneca.

21. Cliffs has sent monthly invoices to Seneca and has had frequent communications with Seneca regarding Seneca's duties under the UPA. Cliffs has also had multiple conversations and meetings with Seneca over the past few months, where Seneca acknowledged its duties. However, Seneca has continued to breach the UPA.

### The BB&T Litigation and Settlement Agreement

22. In March 2016, BB&T Equipment Finance Corporation filed a lawsuit in the Northern District of Ohio against Seneca's company, Oak Grove Resources, and Cliffs (as

guarantor) for Seneca's failure to make timely lease payments (the "BB&T Litigation"), including a lease payment of approximately $437,000 that was due on February 6, 2016.

23. On March 23, 2016, Cliffs notified Seneca that Cliffs had been named a party to the BB&T Litigation. Cliffs requested indemnification from Seneca regarding the BB&T Litigation, and Seneca agreed to indemnify Cliffs for all expenses incurred as a result of the BB&T Litigation.

24. Effective July 14, 2016, the parties agreed to a settlement agreement to resolve the BB&T Litigation (the "Settlement Agreement"). As part of that Settlement Agreement, Cliffs specifically reserved all rights against Seneca, including any and all defaults under the UPA, and Cliffs' right to seek indemnification from Seneca for Cliffs' losses in the BB&T Litigation, including attorneys' fees. Seneca also reserved all rights against Cliffs in the Settlement Agreement.

25. As part of the Settlement Agreement, the parties agreed that "Judge Polster and the Federal District Court for the Northern District of Ohio, Eastern Division shall retain jurisdiction to enforce the terms of this Agreement or otherwise."

26. On July 14, 2016, this Court dismissed the BB&T Litigation with prejudice, specifically retaining jurisdiction under the Settlement Agreement.

27. Although Seneca agreed to indemnify Cliffs for all expenses incurred in the BB&T Litigation, Seneca has failed and/or refused to reimburse Cliffs for those expenses, including attorneys' fees and interest incurred in the BB&T Litigation.

**Seneca's Fraudulent Transfers**

28. On December 20, 2016, Cliffs filed its initial complaint in this matter against Seneca, Thomas M. Clarke, Ana M. Clarke, Kenneth R. McCoy, and Jason R. McCoy with claims for Breach of Contract and Declaratory Judgment. [Dkt. 1.]

6

9088952.1

29. The Declaratory Judgment action alleged that upon information and belief, Seneca planned "to transfer and/or divert monies and/or funds from Seneca to affiliated companies and/or owners with the actual intent to hinder, delay, or defraud Cliffs." [*Id.* at ¶45.] To that end, Cliffs sought a declaration from the Court that the defendants were not entitled to any such transfer made from Seneca to affiliated companies or owners until Cliffs right to payment from Seneca had been satisfied by Seneca.

30. In addition to Cliffs' complaint, on December 20, 2016, Cliffs also filed a Motion for Expedited Discovery (the "Expedited Discovery Motion") in which it sought, among other things, information regarding whether Seneca had made, or expected to make, any transfers to any of its owners, members, corporate parents, subsidiaries, or affiliates from January 2016 to the present. [Dkt. 3.]

31. In response Cliffs' Expedited Discovery Motion, on December 27, 2016, counsel for the Individual Defendants sent to Cliffs' counsel declarations executed by the Individual Defendants, which expressly stated that beginning on December 24, 2015 – shortly after the business transaction in which Seneca assumed the substantial $268 million of debts associated with the UPA – Seneca made a number of distributions to affiliate companies Lara Natural Resources and Iron Management. [These declarations are attached to the original defendants' Motion to Dismiss, Dkt. 8-2.] Upon information and belief, Lara Natural Resources is an entity in which Ana M. Clarke is the sole member, and Iron Management is an entity in which Kenneth R. McCoy and Jason R. McCoy are the majority members.

32. Indeed, a mere two days after Seneca executed the UPA with Cliffs, on December 24, 2015, Seneca transferred $50,000 to Lara Natural Resources. [*See* Declaration of Thomas Clarke and Ana Clarke (the "Clarke Declaration"), ¶1, Dkt. 8-2; Declaration of Kenneth and Jason McCoy (the "McCoy Declaration"), ¶1, Dkt. 8-3.]

33. Likewise, less than two weeks later, on January 5, 2016, Seneca made further distributions of $1 million to Lara Natural Resources and $1,050,000 to Iron Management. [*See id.*]

34. Furthermore, on February 9, 2016, after defaulting on the $437,000 lease payment due to BB&T on February 6, 2016, and failing to replace the bonds by February 5, 2016, Seneca transferred an additional $300,000 to Iron Management. [*See id.*]

35. Finally, according to the Clarke and McCoy Declarations, Seneca made an untold amount of cash distributions to "other affiliate companies owned by the members." [*Id.*]

36. All told, within 7 weeks of executing the UPA, Seneca transferred at least $2.4 million to insider affiliate companies who, upon information and belief, were not legitimate creditors of Seneca. In fact, Interrogatory No. 1 attached to the Expedited Discovery Motion, required Seneca, Thomas Clarke, Ana Clarke, Kenneth McCoy, and Jason McCoy to state what Seneca received in return for the transfers. In response to Interrogatory No. 1, the Clarke and McCoy Declarations do not identify any consideration at all.

37. During the time when Seneca and the Individual Defendants conspired to cause the transfer of $2.4 million, Seneca had taken on significant debt to Cliffs, failed to get a release of Cliffs' guarantee on the BB&T lease, missed the $437,000 BB&T lease payment on which Cliffs was guarantor, and failed to cause the release on Cliffs' bonds within the contractual time period.

38. Thus, despite Seneca owing money to Cliffs under the UPA and Cliffs being a creditor of Seneca, upon information and belief, Seneca, Thomas M. Clarke, Ana M. Clarke, Kenneth R. McCoy, and Jason R. McCoy conspired to make at least $2.4 million in transfers from Seneca instead of paying its legitimate debts to Cliffs.

8

39. Upon information and belief, neither Lara Natural Resources nor Iron Management are a legitimate creditor of Seneca.

40. Upon information and belief, the "other affiliate companies owned by the members" to whom Seneca and the Individual Defendants conspired to make cash payments are not legitimate creditors of Seneca.

41. Upon information and belief, the assets transferred to Lara Natural Resources, Iron Management, and the "affiliates" are not for reasonably equivalent value nor in good faith.

42. Furthermore, upon information and belief, transfers of cash and other assets continued throughout 2016, and into 2017, despite Seneca owing money to Cliffs.

43. During 2016, Cliffs issued monthly invoices to Seneca. Despite Cliffs' attempts to obtain payment from Seneca, both Seneca and the Individual Defendants have told Cliffs that Seneca does not have the funds to repay Cliffs. Despite these statements, Seneca and the Individual Defendants have continued to make transfers to insiders rather than paying its legitimate debts to Cliffs.

44. A major transfer, identified by Defendants as a "restructuring" or "reorganization," has been and is contemplated to occur. Indeed, Defendants have admitted to counsel for Cliffs that a "restructuring" resulting in transfers from Seneca was actually contemplated prior to Cliffs' lawsuit and that a "reorganization" of Seneca is still contemplated.

45. Despite Cliffs' request that Seneca not make any transfers until Cliffs is fully reimbursed, Seneca and the Individual Defendants have refused to provide any assurances that no further transfers will occur. Instead, the Individual Defendants have only agreed to give 30 days' notice to Cliffs if a "restructuring" will take place. This "30 day notice" provides no assurances whatsoever to Cliffs that no further transfers will be made.

46. Defendants have also stated that Seneca is in dire financial condition and was struggling to meet its December 2016 payroll. On December 31, 2016 Seneca defaulted on an admitted obligation to reimburse Cliffs $2 million for payroll expenses, bringing the unpaid invoices to a total of over $6.5 million, plus a duty to obtain new financial assurances sufficient to release Cliffs' letters of credit in excess of $10,112,692 for workers' compensation insurance.

47. Throughout 2016, the amount of outstanding debt owed from Seneca to Cliffs continued to grow, and such debts will continue to accrue until Seneca completes the assumption of responsibility for all liabilities for which it is responsible under the UPA, including the workers' compensation matters. Seneca has repeatedly stated that it did not have the funds to pay its debts to Cliffs. And yet, while these outstanding debts were continuing to increase, Seneca and the Individual Defendants conspired to fraudulently transfer Seneca's assets to insider affiliates rather than pay the debts to Cliffs.

## CLAIMS FOR RELIEF

### COUNT I
### (Breach of Contract – The UPA)

48. Cliffs reaffirms and realleges the allegations contained in paragraphs 1 through 47 of this First Amended Complaint as if rewritten fully herein.

49. The UPA is a valid and enforceable contract.

50. Cliffs has performed its obligations under the UPA in good faith.

51. Seneca has failed or refused to reimburse Cliffs for expenses incurred, as promised in the UPA.

52. Seneca has failed or refused to indemnify Cliffs for expenses incurred in the BB&T Litigation.

9088952.1

53. Seneca failed or refused to replace certain bonds and guarantees, forcing Cliffs to incur additional expenses that Seneca failed or refused to pay.

54. Seneca has failed or refused to obtain workers' compensation insurance for existing claims, obtain new financial assurance sufficient to release Cliffs' letters of credit in excess of $10,112,693, and take over the administration and funding of workers' compensation matters as required under the UPA and as acknowledged by Seneca.

55. As a direct and proximate result of Seneca's breach of contract, Cliffs has suffered compensatory damages in an amount to be determined at trial, but in excess of $6.5 million and been damaged by the on-going costs of supplying letters of credit in an amount of $10,112,693.

56. As a direct and proximate result of Seneca's breach of contract, Cliffs is entitled to a mandatory and permanent injunction, requiring Seneca to post collateral sufficient to replace the collateral that Cliffs has had to post for the letters of credit.

57. In addition, Cliffs is entitled to its attorneys' fees in this action under the parties' indemnification provision in the UPA.

## COUNT II
### (Fraudulent Conveyance – R.C. 1336.04(A)(1))

58. Cliffs reaffirms and realleges the allegations contained in paragraphs 1 through 57 of this First Amended Complaint as if rewritten fully herein.

59. Based upon the UPA, Defendant Seneca has an outstanding debt to Cliffs for reimbursement and indemnification. This balance continues to increase and be due and owing to Cliffs despite repeated attempts by Cliffs to obtain payment from Seneca in satisfaction of the debt.

9088952.1

60. Seneca does not dispute that this debt is legitimate and is due and owing to Cliffs. As such, Cliffs is a creditor of Seneca.

61. Instead of using Seneca's funds for payment to Cliffs in satisfaction of the debt, upon information and belief, Seneca transferred or diverted monies and/or funds to Lara Natural Resources, Iron Management, and "other affiliate companies owned by the members" with the actual intent to hinder, delay, or defraud Cliffs.

62. Lara Natural Resources, Iron Management, and the "affiliates" with common ownership are insiders of Seneca with knowledge of the debt owed to Cliffs. None of the insiders took or received transfers from Seneca in good faith.

63. The transfers made to Lara Natural Resources, Iron Management, and the "affiliates" commenced shortly after Seneca incurred the $268 million debt as a result of the UPA.

64. The transfer to Iron Management of $300,000 occurred shortly after Seneca failed to make the $437,000 lease payment on the BB&T lease and failed to replace Cliffs' bonds as required under the UPA. These failures are events upon which Seneca could have reasonably anticipated litigation.

65. Upon information and belief, Seneca received no equivalent value in exchange for the transfer of funds to Lara Natural Resources, Iron Management, or the "affiliates." Despite being required in Interrogatory No. 1 to identify any consideration or value exchanged for the transfers by Seneca, the Individual Defendants have identified none in the Clarke and McCoy Declarations.

66. Seneca, Lara Natural Resources, Iron Management, and the "affiliates" concealed these transfers from its creditor, Cliffs, until Cliffs filed its Expedited Discovery Motion which required Defendants to disclose information regarding transfers.

12

67. Furthermore, the Individual Defendants all directed, participated in, and/or ratified the transfers and the concealment of the transfers from Cliffs.

68. Jason McCoy, Kenneth McCoy, and Thomas Clarke's control over Seneca is so complete that Seneca has no separate mind, will, or existence of its own.

69. Jason McCoy and Kenneth McCoy's control over Iron Management is so complete that Iron Management has no separate mind, will, or existence of its own.

70. Ana Clarke's control over Lara Natural Resources is so complete that Lara Natural Resources has no separate mind, will, or existence of its own.

71. Individual Defendants' control over Seneca, Iron Management, and Lara Natural Resources, respectively, was exercised in such a manner as to commit fraud against Cliffs.

72. Cliffs suffered injury or unjust loss as a result of Individual Defendants' control and wrongdoing.

73. As a result of the foregoing, Cliffs has suffered damages in an amount to be proven at trial, and is entitled to the avoidance and return of any funds transferred to Lara Natural Resources, Iron Management, and the "affiliates," along with a judgment against all Defendants, jointly and severally for the value of the transfers.

74. In addition, Cliffs is entitled to an injunction prohibiting Seneca, Lara Natural Resources, and/or Iron Management from transferring money or assets from Seneca, Lara Natural Resources, and/or Iron Management to anyone until Cliffs' rights to payment from Seneca (including the replacement of the collateral for the workers' compensation policies) have been satisfied by Seneca.

## COUNT III
### (Conspiracy to Commit Fraudulent Transfer)

75. Cliffs reaffirms and realleges the allegations contained in paragraphs 1 through 74 of this First Amended Complaint as if rewritten fully herein.

76. The Individual Defendants in this matter are members of the fraudulent transferor, Seneca, and the transferees, Lara Natural Resources, and/or Iron Management, who received at least $2.4 million in assets from Seneca.

77. Ana M. Clarke is the sole member of Lara Natural Resources; Kenneth R. McCoy and Jason R. McCoy are majority members of Iron Management; and Kenneth R. McCoy, Jason R. McCoy, and Thomas M. Clarke are majority members of Seneca.

78. As a result of their respective ownership interests in Seneca, Lara Natural Resources, and/or Iron Management, the Individual Defendants had a personal financial interest in ensuring that Seneca's funds would not be used to repay its debts to Cliffs, but rather to divert such funds away to Lara Natural Resources, Iron Management, and other owned "affiliates" of Seneca.

79. To that end, upon information and belief, the Defendants maliciously collaborated and contrived to deprive Cliffs of the funds that were rightly owed to Cliffs as a legitimate creditor of Seneca. This collaborative effort to transfer funds to the detriment of Cliffs was purposeful to injure Cliffs without reasonable or lawful excuse.

80. None of the Individual Defendants were acting within the scope of their corporate role, but rather pursuant to their personal interests.

81. Each of the Defendants participated in, authorized, ratified and/or adopted the fraudulent transfers for their benefit. Each of the Defendants knew that Cliffs was a legitimate

14

9088952.1

creditor and Lara Natural Resources, Iron Management, and the "affiliates" were not legitimate creditors of Seneca.

82. As a result of the malicious effort of the multiple Defendants, the independent unlawful tortious act of actual fraudulent transfer occurred wherein Seneca fraudulently transferred funds to Lara Natural Resources, Iron Management, and "affiliates" at the expense of its legitimate creditor, Cliffs.

83. As a result of malicious effort of the multiple Defendants, Cliffs has been injured in the amount of the fraudulent transfers, in no event less than $2.4 million, but which will be determined at trial.

84. In addition, the acts were committed with actual malice, including that all Defendants knew of and consciously disregarded Cliffs' rights and knew that the fraudulent transfers would cause substantial harm to Cliffs. Thus, Cliffs is entitled to an award of punitive damages and attorneys' fees against all Defendants, jointly and severally.

## **DEMAND FOR JUDGMENT**

**WHEREFORE**, Plaintiff Cliffs Natural Resources Inc. respectfully requests that the Court enter judgment in its favor as follows:

- A. Compensatory damages against Seneca in an amount to be determined at trial, but no less than $6.5 million ($6,500,000), exclusive of costs and interest;

- B. An injunction requiring Seneca to replace the letters of credit in an amount of at least $10,112,693, or post collateral sufficient to replace the collateral that Cliffs has had to post for the letters of credit;

- C. Costs and attorneys' fees against Seneca under the parties' indemnification provision in the UPA;

- D. An injunction prohibiting Seneca, Lara Natural Resources, and/or Iron Management from transferring money or assets from Seneca to anyone until Cliffs' rights to payment from Seneca (including the replacement of the collateral for the workers' compensation policies) have been satisfied by Seneca;

E.  Compensatory damages against all Defendants, jointly and severally, for the value of any transfers made by Seneca to the other Defendants in an amount not less than $2.4 million.

F.  An award of punitive damages and attorneys' fees against all Defendants, jointly and severally; and

G.  Any other relief this Court may deem just an appropriate under the circumstances.


Respectfully submitted,

 /s/ Robert J. Fogarty

OF COUNSEL:

HAHN LOESER & PARKS LLP

Robert J. Fogarty (0006818)
E. Sean Medina (0082558)
200 Public Square – Suite 2800
Cleveland, Ohio 44114
Phone:  (216) 621-0150
Fax:  (216) 241-2824
Email: rjfogarty@hahnlaw.com
        smedina@hahnlaw.com

Attorneys for Plaintiff Cliffs Natural Resources Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2017, a copy of the foregoing was served via the Court's CM/ECF system, which will give notice to the parties in this action.

                                        /s/ Robert J. Fogarty
                                        One of the Attorneys for Plaintiff