UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CLIFFS NATURAL RESOURCES INC. | ) | CASE NO. 1:16-cv-03034-CAB |
| | ) | |
| Plaintiff, | ) | JUDGE  C. A. Boyko |
| | ) | |
| v. | ) | |
| | ) | |
| SENECA COAL RESOURCES, LLC, et al. | ) | ANSWER AND COUNTERCLAIMS |
| | ) | OF |
| Defendants. | ) | SENECA COAL RESOURCES LLC |
| | ) | |

## ANSWER AND COUNTERCLAIMS OF SENECA COAL RESOURCES, LLC TO FIRST AMENDED COMPLAINT

NOW COMES Defendant Seneca Coal Resources, LLC ("Seneca"), by counsel, and in response to the First Amended Complaint filed by Plaintiff Cliffs Natural Resources Inc. (hereinafter "Cliffs") states as follows:

### FIRST DEFENSE

Cliffs's First Amended Complaint fails to state a claim upon which relief can be granted.

### SECOND DEFENSE

Seneca answers the specific allegations of the First Amended Complaint as follows:

1-2.    Denied.

3-4.    Admitted.

5-10.    The allegations in Paragraphs 5, 6, 7, 8, 9, and 10 are directed to another party or parties and, therefore, no response is required of Seneca.

11-12. The allegations in Paragraphs 11 and 12 state legal conclusions to which no response is required.

7406274

13.     The allegations in Paragraph 13 state legal conclusions to which no response is required.  To the extent a response is required, Seneca states that the allegations in Paragraph 13 refer to the contents of a written document that speaks for itself and, therefore, no response is required.

## PLAINTIFF'S FACTUAL ALLEGATIONS

14.     Seneca admits only that on December 22, 2015, Cliffs, CLF PinnOak LLC, and Seneca entered into a Unit Purchase Agreement (which Plaintiff refers to as the "UPA" in the Complaint), whereby Cliffs, through CLF PinnOak LLC, agreed to sell the outstanding equity interests of Cliffs North American Coal LLC (which Plaintiff refers to as the "CNAC" in the Complaint) to Seneca.   Seneca lacks sufficient knowledge and information upon which to formulate a belief concerning the allegation that the value of the transaction at closing was $268 million and, therefore, denies the same.  To the extent that Paragraph 14 refers to the contents of a written document, Seneca states that the same speaks for itself.  No response is required to the remaining allegations of Paragraph 14.  To the extent that Paragraph 14 contains allegations inconsistent with the above admission, the same are denied.

15-17.  The allegations in Paragraphs 15-17 refer to the contents of a written document that speaks for itself, and, therefore, no response is required.

18.     The allegations in Paragraph 18 refer to the contents of written documents that speak for themselves and, therefore, no response is required.  Seneca lacks sufficient knowledge and information upon which to formulate a belief concerning the remaining allegations in Paragraph 18 and, therefore, denies the same.

19-20.  To the extent the allegations in Paragraphs 19 and 20 refer to the contents of a written document that speaks for itself, no response is required.  The remaining allegations in Paragraph 19 and 20 state legal conclusions to which no response is required.

21.  Seneca admits only that Cliffs has sent monthly invoices to Seneca and has had communications with Seneca regarding Seneca's duties under the UPA.  The remaining allegations in Paragraph 21 state legal conclusions to which no response is required.  To the extent Paragraph 21 states allegations inconsistent with the above admission, the same are denied.

22-23.  Admitted.

24-25.  The allegations in Paragraphs 24 and 25 refer to the contents of a written document that speaks for itself and, therefore, no response is required.

26.  The allegations in Paragraph 26 refer to the contents of a written document that speaks for itself and, therefore, no response is required.

27.  It is admitted only that Seneca has reimbursed Cliffs for some, but not all, expenses incurred for what Cliffs refers to as the "BB&T Litigation."  To the extent Paragraph 27 contains allegations inconsistent with this admission, the same are denied.

28.  Admitted.

29.  Seneca states that the allegations set forth in the initial complaint in this matter have been superseded by the allegations set forth in an amended complaint.  Seneca further states that the allegations in Paragraph 29 refer to the contents of a written document that speaks for itself and, therefore, no response is required.

30.  Admitted.

31.  To the extent that Paragraph 31 contains allegations directed to another party or parties, no response is required.  To the extent a response is required, it is admitted only that Seneca

made transfers to Lara Natural Resources and Iron Management in the ordinary course of business. The remaining allegations in Paragraph 31 refer to the contents of a written document that speaks for itself and, therefore, no response is required.  To the extent Paragraph 31 contains allegations inconsistent with the above admission, the same are denied.

32.     Upon information and belief, and subject to revision or correction as necessary, it is admitted only that Seneca Transferred $50,000 to Lara Natural Resources on December 24, 2015 in the ordinary course of business.  The remaining allegations in Paragraph 32 refer to the contents of written documents that speak for themselves and, therefore, no response is required.  Seneca denies each and every allegation not specifically admitted herein.

33.     Upon information and belief, but subject to revision or correction as necessary, it is admitted only that Seneca made distributions of $1 million to Lara Natural Resources and $1,050,000 to Iron Management in the ordinary course of business on January 5, 2016.  To the extent Paragraph 33 contains allegations inconsistent with the above admission, the same are denied.

34.     Upon information and belief, but subject to revision or correction as necessary, it is admitted only that Seneca made transferred $300,000 to Iron Management in the ordinary course of business on February 9, 2016.  To the extent Paragraph 34 contains allegations inconsistent with the above admission, the same are denied.

35.     To the extent that the allegations in Paragraph 35 refer to the contents of written documents, Seneca states that the documents speak for themselves and, therefore, no response is required.  To the extent a response may be required, upon information and belief, and subject to revision or correction as necessary, it is admitted only that Seneca made a cash distribution to other

affiliate companies owned by the members in the ordinary course of business.  Seneca denies each and every allegation not specifically admitted herein.

36.     To the extent that the allegations in Paragraph 36 refer to the contents of written documents, Seneca states that the documents speak for themselves and, therefore, no response is required.  The remaining allegations in Paragraph 36 are denied.

37-40.  Denied.

41.     The allegations in Paragraph 41 state legal conclusions to which no response is required.  To the extent a response may be required, denied.

42.     The allegations in Paragraph 42 state legal conclusions to which no response is required.  To the extent a response may be required, it is admitted only that Seneca transferred cash and other assets in the ordinary course of business throughout 2016 and into 2017.  Seneca denies each and every allegation not specifically admitted herein.

43.     To the extent Paragraph 43 contains allegations directed to another or other defendants, no response is required.  Seneca admits that Cliffs has had ongoing communications regarding Seneca's payments.  Seneca denies, upon information and belief, that statements were made to Cliffs that Seneca would not make required payments.  To the extent Paragraph 43 contains allegations inconsistent with the above admission, the same is denied.

44.     To the extent Paragraph 44 contains allegations directed to another or other defendants, no response is required.  To the extent a response is required, it is denied that restructuring has occurred.  Seneca affirmatively states that Cliffs was timely advised that a restructuring has not occurred and, therefore, upon and information and belief, denies that Cliffs has been advised to the contrary.

45.　　It is admitted only that Seneca agreed in good faith to provide 30 days' advance notice in order to provide Cliffs a meaningful opportunity to respond.  To the extent that Paragraph 45 contains allegations inconsistent with this admission, the same are denied.

46.　　 To the extend Paragraph 46 contains allegations directed to another or other defendants, no response is required.  Seneca admits that it has engaged in extensive discussions with Cliffs since it was incorporated, including discussions relating to its financial condition; discussions that continued unabated until Cliffs files this lawsuit.  Contrary to the allegation in Paragraph 46, Seneca met its December 2016 payroll.  The remaining allegations in Paragraph 46 state legal conclusions to which no response is required.

47.　　The allegations in Paragraph 47 state legal conclusions to which no response is required.  To the extent a response is required, Seneca denies that it participated in a conspiracy.  Seneca denies each and every allegation not specifically admitted herein.

## PLAINTIFF'S CLAIMS FOR RELIEF

### COUNT I
### (Alleged Breach of Contract – The UPA)

48.　　Seneca incorporates its responses to paragraph 1 through 47 above as if incorporated herein verbatim.

49-50.　The allegations in Paragraphs 49 and 50 state legal conclusions to which no response is required.

51.　　It is admitted only that Seneca has reimbursed Cliffs for some, but not all, expenses incurred.  To the extent Paragraph 51 contains allegations inconsistent with this admission, the same are denied.

52.　　Denied.

53.     It is admitted only that Seneca has been unable to replace certain bonds and guarantees.  To the extent Paragraph 53 contains allegations inconsistent with this admission, the same are denied.  Seneca lacks sufficient knowledge and information to formulate a belief concerning the allegation that Cliffs has incurred additional expenses and, therefore, denies the same.  All allegations not specifically admitted herein are denied.

54.     The letters of credit that are the subject of this paragraph and at the center of Cliffs' Complaint are not identified or listed in the UPA; they do not appear in any of the appendices or disclosures.  The actual existence of these letters of credit were first revealed to Seneca in March or April 2016 during a telephone conference, believed to be with Cliff Smith.  Accordingly, Plaintiff Cliffs suggestion that Seneca blithely ignored the obligation to replace these letters of credit is a mischaracterization of both the actual facts and the nature of the obligation.  Seneca admits that it has been unable to obtain financing to replace the letters of credit because it is a newly created corporation.  As such, it was impossible to secure audited financial statements, which are a prerequisite to obtaining necessary financing to replace the letters of credit.  At all times pertinent to this lawsuit, Cliffs has been advised as to this state of affairs, including being provided with documentations from potential lenders stating that audited financials are required.  Therefore, Cliffs knew or should have known that Seneca, as a recently created entity, would not be in a position to generate audited financial statements until it had been in operation for a year.  Despite repeated requests, Cliffs has refused to provide documentation necessary to complete the actuarial study related to workers' compensation and black lung liability and retiree medical insurance; all such documentation required to complete the audited financial statements.  Accordingly, Cliffs intransigence is preventing Seneca from obtaining audited financial statements and the financing required to replace the letters of credit.  At all times pertinent to this litigation,

Cliffs has been advised by Seneca with respect to this audit issue, Cliffs need to cooperate with the process and Seneca's consequent inability to remedy the allegation asserted in Paragraph 54.

55-57.  Denied.

## COUNT II
### (Alleged Fraudulent Conveyance – R.C. 1336.04(A)(1))

58.     Seneca incorporates its responses to paragraph 1 through 57 above as if incorporated herein verbatim.

59.     To the extent the allegations in Paragraph 59 refer to the contents of a written document, Seneca states the document speaks for itself and, therefore, no response is required. Seneca admits only that an undetermined sum is owed Cliffs for reimbursement and indemnification, subject to offset for an undetermined sum owed Seneca.  To the extent Paragraph 59 contains allegations inconsistent with this admission, the same are denied.

60.      The allegations in Paragraph 60 state legal conclusions to which no response is required.  To the extent a response may be required, denied.

61-62.  Denied.

63.     It is admitted only that Seneca made transfers to Lara Natural Resources and Iron Management in the ordinary course of business after the UPA was executed.  Seneca lacks sufficient knowledge and information upon which to formulate a belief concerning the allegation that the value of the transaction at closing was $268 million and, therefore, denies the same.  To the extent that Paragraph 63 contains allegations inconsistent with this admission, the same are denied.

64.     The allegations in Paragraph 64 state legal conclusions to which no response is required.  To the extent a response may be required, Seneca admits only that it made transfers in

the ordinary course of business to Iron Management on February 5, 2016.  To the extent that Paragraph 64 contains allegations inconsistent with this admission, the same are denied.

65-66.  Denied.

67-70.  The allegations in Paragraphs 67-70 are directed to another defendant or defendants and, therefore, no response is required.

71.      To the extent the allegations in Paragraph 71 are directed to another defendant or defendants, no response is required.  To the extent a response is required, denied.

72.      The allegations in Paragraph 72 are directed to another defendant or defendants and, therefore, no response is required.

73-74.  Denied.

<u>COUNT III</u>
<u>(Alleged Conspiracy to Commit Fraudulent Transfer)</u>

75.      Seneca incorporates its responses to paragraph 1 through 74 above as if incorporated herein verbatim.

76.      Denied.

77.      To the extent the allegations in Paragraph 77 are directed to another defendant or defendants, no response is required.  To the extent a response is required, it is admitted only that Jason R. McCoy and Thomas M. Clarke are majority members of Seneca.  To the extent that Paragraph 77 contains allegations inconsistent with this admission, the same are denied.

78.      To the extent the allegations in Paragraph 78 are directed to another defendant or defendants, no response is required.  To the extent a response is required, denied.

79.      Denied.

80.      The allegations in Paragraph 80 are directed to another defendant or defendants and, therefore, no response is required.

81-84.  Denied.

Seneca denies each and every allegation not specifically admitted herein.  Seneca further denies the allegations set forth in the "WHEREFORE" clause and its subparagraphs (A), (B), (C), (D), (E), (F), and (G).

### THIRD DEFENSE

Cliffs's claims for fraudulent transfers are barred due to its failure to plead the circumstances of the alleged fraud with particularity.

### FOURTH DEFENSE

The transfers and distributions described in the First Amended Complaint were made in the ordinary course of business or in good faith or for a reasonably equivalent value.

### FIFTH DEFENSE

The damages claimed in the First Amended Complaint cannot be recovered because they are remote, speculative, and/or not reasonably certain to be incurred, to the extent that discovery warrants application of this defense.

### SIXTH DEFENSE

Cliffs's conspiracy claim against this Defendant is barred, in whole or in part, pursuant to the intracorporate conspiracy doctrine.

### SEVENTH DEFENSE

To the extent that Cliffs has suffered any damages (which is denied), Cliffs's claims are barred, in whole or in part, by its failure to mitigate such alleged damages.

### EIGHTH DEFENSE

All or part of the damages claimed are or may be barred by the doctrines of setoff and/or recoupment.

**NINTH DEFENSE**

Cliffs's claims for breach of contract are or may be barred by its own material breaches of the agreements upon which its claims are founded.

**TENTH DEFENSE**

The First Amended Complaint fails to state a cause of action upon which punitive or exemplary damages can be awarded.

**ELEVENTH DEFENSE**

The First Amended Complaint's request for punitive damages violates Seneca's right to procedural due process under the Fifth and Fourteenth Amendment of the United States Constitution and the Constitution of the State of Ohio.

**TWELFTH DEFENSE**

Because investigation and discovery are ongoing, Seneca pleads the defenses of statute of limitations, accord and satisfaction, duress, estoppel, failure of consideration, fraud, illegality, release, res judicata, waiver, laches, and unclean hands to the extent they are applicable to the facts of this civil action.

**THIRTEENTH DEFENSE**

Seneca incorporates by reference each and every affirmative defense available to it under Rule 8(c), Rule 9(b) and Rule 12(b) of the *Federal Rules of Civil Procedure* which discovery might reveal appropriate and reserve the right to assert additional affirmative defenses as Cliffs's claims are clarified during the course of this litigation.

11

## FIRST COUNTERCLAIM

### (Breach of Contract –  The "Off-Books" Accounts Payables)

1. Plaintiff Cliffs Natural Resources and Defendant Seneca Coal Resources are parties to a Unit Purchase Agreement ("UPA"), dated December 22, 2015.  Plaintiff has breached that agreement and by its first counterclaim Seneca seeks damages for that breach of contract.

2. Subsequent to December 22, 2015 and previously unknown to Seneca, Seneca learned that substantial vendor liabilities (accounts payables) were not being carried on the books of the company acquired by Seneca from Cliffs under the UPA (hereinafter referred to as the "off-books" accounts payables.)

3. These "off-book" accounts payables vendor liabilities were not disclosed by Cliffs to Seneca, prior to the transaction date.  In fact, on information and belief, subsequent to the closing date of the acquisition, accounting employees from the mining operations advised Seneca that they had been instructed not to record accounts payable invoices in the last days prior to the closing of the transaction.

4. After careful investigation, Seneca determined that the amount of vendor liabilities that had not been carried on the company books at the time of the transaction were in an amount in excess of $3,000,000.

5. The Unit Purchase Agreement is a confidential document and Plaintiff is in possession of copies.  In that agreement, Plaintiff made certain representations and warranties and other terms with respect to the transaction and the assets acquired by Seneca.

6. The failure of Plaintiff to disclose these "off-books" accounts payables vendor liabilities and their subsequent improper transfer by Plaintiff to Seneca breached certain representations and warranties and other terms of the UPA.

7.  Breach of contract is a legal action recognized by the courts of the State of Ohio and thus cognizable by this Court under federal law.

8.  By its first counterclaim, Defendant Seneca seeks an award of damages against Plaintiff in an amount not less than of $3,000,000 for Plaintiff's breach of the Unit Purchase Agreement.

### SECOND COUNTERCLAIM

**(Breach of Contract –Failure to Contribute to UMWA Pension Fund)**

9.  Plaintiff Cliffs Natural Resources and Defendant Seneca Coal Resources are parties to a Unit Purchase Agreement ("UPA"), dated December 22, 2015.  Plaintiff has breached that agreement and by its second counterclaim Seneca seeks damages for that breach of contract.

10. Subsequent to December 22, 2015 and previously unknown to Seneca, Seneca learned that Plaintiff had failed to make certain required contributions to a union employee pension fund—the United Mine Works of America (UMWA) Health and Retirement Funds--that it was required to make.

11. The UMWA Health and Retirement Funds ("UMWA Funds") conducted an audit of Plaintiff's Oak Grove Resources LLC that covered the period January 1, 2007 to September 30, 2015 prior to its acquisition by Defendant Seneca under the UPA.

12. Plaintiff Cliffs was aware of the ongoing audit and was aware of its legal exposure for underpayment and deliberately and wrongfully failed to disclose and/or concealed the audit and legal exposure from Defendant Seneca.

13. The UMWA Funds audit revealed that Plaintiff Cliffs had systematically underpaid its obligations by more than $400,000 dating back to 2007.

14. Defendant Seneca notified Plaintiff of this obligation, Plaintiff's failure to pay, but Plaintiff refused to meets it obligation to make the required contribution payments.

15. As result of this failure by Plaintiff Cliffs to meet its obligations to the UMWA Funds, Defendant Seneca was subsequently sued by the UMWA Funds.

16. Plaintiff Cliffs has refused to assist Defendant Seneca in its defense of the lawsuit and has refused to produce documents that would allow Defendant Seneca to defend itself from the UMWA Funds claim.

17. As a result of Plaintiff's failure to make the required contribution payment, Defendant Seneca has a litigation liability risk in an amount of approximately $400,000.   Further, Defendant Seneca has been forced to incur, and is continuing to incur, significant legal fees and costs in its defense of the claim.

18. In addition, Defendant Seneca has been informed that the UMWA Funds intend to conduct an audit of another mine asset (Pinnacle Mine) acquired by Seneca from Plaintiffs Cliffs under the UPA.  Additionally, under-payments to the UMWA Funds may be revealed by that audit, subjecting Defendant Seneca to additional legal liability risks and legal representation costs stemming from failures of Plaintiff Cliffs to meet its obligations to the UMWA Funds.

19. The Unit Purchase Agreement is a confidential document and Plaintiff is in possession of copies.  In that agreement, Plaintiff made certain representations and warranties and other terms with respect to the transaction and the assets acquired by Seneca.

20. The failure of Plaintiff to make the required contribution to the UMWA Funds is a breach of certain representations and warranties and other terms of the UPA.

21. Breach of contract is a legal action recognized by the courts of the State of Ohio and thus cognizable by this Court under federal law.

22. By its second counterclaim, Defendant Seneca seeks an award of damages against Plaintiff in an amount no less than $400,000 and legal fees and costs incurred by Seneca related to the failure of Plaintiff to disclose and/or pay its obligations to the UMWA Funds.

## THIRD COUNTERCLAIM

### (Breach of Contract  -- Contractual Shortages at Closing)

23. Plaintiff Cliffs Natural Resources and Defendant Seneca Coal Resources are parties to a Unit Purchase Agreement ("UPA"), dated December 22, 2015.  Plaintiff has breached that agreement and by its third counterclaim Seneca seeks damages for that breach of contract.

24. In accordance with the terms of the UPA, Cliffs was to make necessary payments to limit the amount of accounts payable to be assumed by Seneca at Closing to $16.5 million.  There were other significant closing conditions, including minimum stockpiles of clean saleable coal inventories that Seneca was to rely upon to allow it to perform its obligations under the UPA.  At Closing, Cliffs grossly failed to meet these minimum coal stockpile requirements.  As a result, after Cliffs provided to Seneca's representatives documentation that the amount of outstanding payables was approximately $14.0 million, it was agreed that Cliffs would pay on the date of Closing an additional $2.0 million, representing that they intended to turnover accounts payable to Seminole of $12.0 million on December 22, 2015.  The actual "booked" amount of accounts payable transferred by Cliffs from the information later provided by Cliffs for the purpose of establishing the opening balance sheet for Seneca was $13.5 million (excluding certain "off-book" accounts payable pleaded

15

in the First Counterclaim above), a net difference of $1.5 million.   Seneca seeks damages in this amount.

25. The Unit Purchase Agreement is a confidential document and Plaintiff is in possession of copies.  In that agreement, Plaintiff made certain representations and warranties and other terms with respect to the transaction and the assets acquired by Seneca.

26. Plaintiff breached certain representations and warranties and other terms of the UPA by virtue of its failure to correctly transfer the amounts due at Closing pleaded above in Paragraph 24.

27. Breach of contract is a legal action recognized by the courts of the State of Ohio and thus cognizable by this Court under federal law.

28. By its third counterclaim, Defendant Seneca seeks an award of damages against Plaintiff in an amount not less than of $1,500,000 for Plaintiff's breach of the Unit Purchase Agreement.

## JURY DEMAND

Seneca demands a trial by jury.


**SENECA COAL RESOURCES, LLC**
**By Counsel**

Respectfully submitted,

s/Mark D. Kindt,
Counsel for the Defendants

Mark D. Kindt (0019569)
Attorney-at-Law
16004 Detroit Ave., Suite 4
Lakewood, Ohio 44107
(216) 521-6024

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of February, 2017, I caused true copies of the foregoing **"ANSWER AND COUNTERCLAIM OF SENECA COAL RESOURCES, LLC TO FIRST AMENDED COMPLAINT"** to be served upon all counsel of record by CM/ECF, and by virtue of the same, electronic notification will be served upon the following:

Robert J. Fogarty, Esq.
E. Sean Medina, Esq.
200 Public Square – Suite 2800
Cleveland, Ohio 44114
Phone: (216) 621-0150
Fax: (216) 241-2824
Email: rjfogarty@hahnlaw.com
smedina@hahnlaw.com
*Counsel for Plaintiff Cliffs*
*Natural Resources Inc.*

s/Mark D. Kindt,
Counsel for the Defendants